**2021 WI App 7**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2019AP2295

Complete Title of Case:

**DAVID J. GRYCOWSKI,**

**PLAINTIFF-APPELLANT,**

**V.**

**MILWAUKEE EMPLOYEES' RETIREMENT SYSTEM/ANNUITY AND PENSION**

**BOARD,**

**DEFENDANT-RESPONDENT.**

| | |
|---|---|
| Opinion Filed: | December 22, 2020 |
| Submitted on Briefs: | September 9, 2020 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Brash, P.J., Graham and White, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jonathan Cermele* of *Cermele & Matthews, S.C.* |
| Respondent ATTORNEYS: | On behalf of the defendant-respondent, the cause was submitted on the brief of *Patrick J. McClain*, assistant city attorney for the City of Milwaukee. |

# COURT OF APPEALS
## DECISION
## DATED AND FILED

### December 22, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No. 2019AP2295** | Cir. Ct. No. 2018CV10455 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

DAVID J. GRYCOWSKI,

      PLAINTIFF-APPELLANT,

  V.

MILWAUKEE EMPLOYEES' RETIREMENT SYSTEM/ANNUITY AND PENSION BOARD,

      DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed*.

Before Brash, P.J., Graham and White, JJ.

¶1 BRASH, P.J. David J. Grycowski appeals an order of the circuit court affirming the decision of the Milwaukee Employees' Retirement System/Annuity and Pension Board (the Board) denying his application for Duty Disability Retirement (DDR) benefits. Grycowski asserts that under the ordinances

that regulate DDR benefits, there is a separate eligibility standard for police officers and firefighters and that he met that standard. The Board determined that there is only a single standard for all employees of the City of Milwaukee, and that Grycowski did not meet it. We agree, and therefore affirm.

## BACKGROUND

¶2    Grycowski was hired by the Milwaukee Police Department (MPD) as a police officer in May 1992. He asserts that during his years on the force, there were seven incidents that occurred while he was on duty which resulted in injuries to his lower back. He contends that the cumulative effect of these injuries has rendered him disabled.

¶3    The first such incident—an accident involving his squad car—occurred in June 1993. The medical reports relating to the treatment Grycowski received for his injuries from that accident indicated that he was treated for pain in his neck and upper back. However, the doctor who performed an independent medical examination (IME) of Grycowski in November 1993, Dr. Michael B. Seidman, noted that Grycowski had reported previously being treated for lower back pain three years prior to that accident—and prior to being hired by MPD. An MRI taken in 1990 showed that he had a bulging disc, for which he had received a cortisone injection. This had alleviated his lower back pain until the June 1993 accident. The physical therapist treating Grycowski after the accident also noted that Grycowski had stated that he had previous problems with his lower back.

¶4    In the course of conducting the IME in November 1993, Dr. Seidman ordered new X-rays of Grycowski's lower back. Dr. Seidman concluded from those X-rays that Grycowski had degenerative disc disease, which he opined was "pre[]existing and unrelated to the squad car accident[.]"

¶5     The second incident was another squad accident in October 1994. Grycowski reported to the treating physician that he had suffered an "*initial* low back injury" in that October 1994 accident. (Emphasis added.) An X-ray taken after the accident showed a narrowing of the vertebrae in the same area as the degenerative disc disease had been noted.

¶6     Grycowski received no further treatment for lower back pain until February 1995. At that time, Grycowski reported that he had injured his back at home when he was bending over to pick up something from the floor. He was hospitalized for a week and treated for severe lower back pain and numbness and tingling down his left leg. The X-rays taken at that time again showed degenerative disc disease in his lower back. However, in the report by the physician treating him at that time, Dr. Michael J. Anderson, it was noted that Grycowski had stated that he "had not had significant difficulties with [h]is back before the June 1993 accident." In other words, Dr. Anderson was not informed of the treatment Grycowski had received for his lower back prior to joining the police force.

¶7     The third incident was yet another squad accident in November 1995. Another IME was conducted in December 1995, this time by Dr. Mark R. Aschliman. In Dr. Aschliman's initial report, he stated that Grycowski had reported "no significant history of low back pain" prior to the squad accident of October 1994. However, Dr. Aschliman clarified that report a few weeks later, stating that the squad accident of October 1994 was an "aggravation[] beyond normal progression of a preexisting condition."

¶8     The next reported incident of back injury was in May 1997, when Grycowski was attempting to apprehend a suspect who was resisting arrest. An MRI done in August 1997 showed "progressive narrowing" of the intervertebral

disc space, indicative of degenerative disc disease. The spine specialist treating Grycowski at that time, Dr. Stephen E. Robbins, recommended lumbar fusion. A claims adjustor for the City clarified with Dr. Robbins that the lumbar strain Grycowski had suffered in May 1997 had resolved itself with no residual issues, and that the recommendation for back surgery was due to Grycowski's degenerative disc disease, which was accelerated by the October 1994 squad accident.

¶9      Grycowski underwent the lumbar fusion surgery in September 1997. Afterwards, he returned to work with permanent lifting restrictions, as well as time limits for sitting and standing.

¶10      Dr. Robbins continued to evaluate Grycowski on an annual basis after his surgery. Starting in April 1999, Grycowski reported that he was having "increasing episodes of back and leg discomfort" and was regularly missing work as a result. In July 1999, Dr. Robbins stated that Grycowski's back pain, which was "related to his employment as a police officer," had continued to worsen even though Grycowski had been "involved extensively in physical therapy and an exercise program," and recommended that Grycowski "be retired on duty disability benefits."

¶11      Grycowski subsequently applied for duty disability benefits; he was thirty-five years old. A duty disability assessment was performed by Dr. Andrew J. Seter in July 1999 for purposes of addressing his application. Grycowski told Dr. Seter that he could not return to full duty as a police officer because he was not able to "physically or mentally perform the job." In fact, Grycowski claimed that he was "permanently disabled" and would "never work again" due to his back problems—that his inability to sit, stand, or walk for any length of time meant that he could not perform any job, for the City or any other employer, "even for a day."

¶12 During the assessment, Grycowski reported that he was not receiving any treatment for his back pain at that time. Additionally, Grycowski stated that while he did stretches "intermittently," he had no "regular involvement in exercises or aerobic conditioning." Dr. Seter observed that Grycowski was "overweight and in poor general physical condition." Dr. Seter also noted that Grycowski "s[a]t throughout the length of the interview without apparent difficulty."

¶13 In his report regarding the IME, Dr. Seter stated that while Grycowski had reported "a series of work related injuries," he "should be viewed to have had a degenerative disc condition of the lumbar spine which predated his work related accidents." Moreover, Dr. Seter opined that Grycowski's "obesity and physical deconditioning have likely served as much greater factors in the development of his ongoing low back symptoms." In short, Dr. Seter concluded that duty disability benefits were not appropriate, and that Grycowski could return to work under the modified duties implemented after his lumbar fusion.

¶14 Dr. Aschliman, who had conducted the IME in December 1995, also conducted a duty disability evaluation on Grycowski in September 1999. Dr. Aschliman referenced the previous IME he had conducted, noting that Grycowski had initially denied having any back problems prior to the October 1994 squad accident, but that a review of additional medical records provided a "slightly different history." Dr. Aschliman noted that this included the June 1993 squad accident, as well as a history of "pre[]existing moderate degenerative disc disease" that was "unrelated in any way" to the June 1993 squad accident.

¶15 Dr. Aschliman further stated that Grycowski had "some disc disease" that "may account" for his complaints. Additionally, Dr. Aschliman observed that Grycowski's condition was "compounded by his morbid obesity and significant

5

physical deconditioning." Dr. Aschliman ultimately concluded that Grycowski was "not permanently and totally disabled from performing work in a limited capacity" and that he "d[id] not in my opinion qualify for retirement on duty disability."

¶16 Grycowski had back surgery again in November 1999 but continued to have pain in his lower back and left leg.

¶17 In August 2003, Grycowski reported straining his lower back after attempting to help a coworker who had fallen on the floor. Two months later, in October 2003, his back was again injured while he was attempting to stop a theft and disorderly conduct incident. Grycowski had another surgery on his lower back in November 2003.

¶18 The final incident reported by Grycowski occurred in January 2005. Grycowski stated that he injured his back while picking up "departmental equipment."

¶19 In December 2006, Grycowski applied for DDR benefits. Although Dr. Robbins expressed the opinion that Grycowski qualified for the benefits, two other doctors who examined him in February 2007 and May 2007 concluded that Grycowski was able to continue employment for MPD with modified, limited duties. However, in August 2009, Grycowski was examined by Dr. Theodore R. Bonner, who determined that Grycowski's psychiatric problems—he had been diagnosed with depression, posttraumatic stress disorder, and anxiety—prevented him from performing even his limited duties. Grycowski was thus granted DDR benefits for psychiatric stress.

¶20 Grycowski had a fourth back surgery in November 2011. All four of Grycowski's back surgeries, as well as all of his back-related medical treatment and

other additional benefits, were paid for by the City's Worker's Compensation Division.

¶21 Grycowski's DDR benefits were rescinded by the Board in April 2015, after he was found to be fit to return to work at the police department. Grycowski was "placed in a limited duty assignment, consistent with his medical capabilities and permanent physical restrictions (stemming from his on[]duty injuries)." However, Grycowski was required to obtain recertification by the Wisconsin Law Enforcement Standards Board, as his certification had lapsed while he was receiving DDR benefits. Furthermore, because his certification had lapsed for more than three years, Grycowski was required to complete the entire police academy course in order to obtain recertification. Due to his physical restrictions relating to his back problems, he was unable to complete the course.

¶22 Because he could not get recertified, Grycowski was given the option of accepting a civilian position with the City. He accepted the position, but reapplied for DDR benefits in August 2016.

¶23 Dr. Stephen Barron conducted an IME on Grycowski in June 2017. The specific question posed to Dr. Barron with regard to Grycowski's application for DDR benefits was whether his condition at that time was directly attributable to the squad accident of October 1994. Dr. Barron opined that it was not; rather, he stated that, after examining Grycowski and reviewing his extensive medical history, the injury he sustained in that accident was "a temporary aggravation of his preexisting condition," and that "it is not probable the alleged work injury caused [Grycowski's] disability and medical condition by precipitation, aggravation, or acceleration" of that preexisting condition.

¶24    Grycowski's DDR benefits application was denied by the Board in September 2017. An appeal hearing was conducted in April 2018 by a hearing examiner, the Honorable Gary A. Gerlach. After reviewing the evidence and testimony presented, Judge Gerlach determined that there was credible evidence that there was "a degenerative disease component that existed prior to and after [Grycowski's] initial squad accident" that has been "at least a cause if not the initial sole cause" of Grycowski's lower back problems "which progressively worsened due to more injuries and surgeries." Although Grycowski denied ever telling Dr. Seidman that he had previously received medical treatment for lower back pain, Judge Gerlach found it "inconceivable" that Dr. Seidman would "make up" specific details for his report, such as Grycowski having had an MRI in 1990 showing a bulging disc and receiving a cortisone shot.

¶25    Judge Gerlach noted that after both the 1993 and 1994 squad accidents, Grycowski was able to return to full duty within a few days after each accident. Furthermore, Grycowski did not report any severe, acute lower back pain until February 1995, after bending over at home. In other words, Judge Gerlach found that there was no evidence of an "acute episode of severe low back pain … close in time to the 93 and/or 94 squad accidents."

¶26    Moreover, with regard to Dr. Robbins' support of Grycowski's application for DDR benefits, Judge Gerlach observed that Dr. Robbins' opinion that Grycowski's herniated discs "appear to be related to his employment" did not include "any opinion … as to the initial direct cause of injury[.]" In fact, Judge Gerlach noted that although there were some conflicting opinions in the doctors' reports regarding the cause of Grycowski's lower back problems, it should be recognized that "this case has a long history of many years," that Grycowski's complete medical records were not always provided or available during those

exams, and that Grycowski had provided "less than total disclosure … of his prior low back condition" to the doctors.

¶27     Additionally, Judge Gerlach rejected Grycowski's contention that he was entitled to DDR benefits based on the cumulative effect of several on-duty injuries.  Judge Gerlach noted that eligibility for DDR benefits requires that the "incapacity for duty must be as the natural and proximate result of an injury occurring at some definite time and place while in the actual performance of duty." (Emphasis omitted.)  Judge Gerlach concluded, based on previous interpretations of the ordinance regulating DDR benefits—which included unpublished decisions of this court—that "[e]ven assuming Mr. Grycowski's degenerative disc disease condition is not the sole cause of his disability it certainly is a contributing cause which would preclude qualification for duty disability benefits" because "[h]is injury must be the sole cause of his disability in order to recover."

¶28     Ultimately, Judge Gerlach upheld the Board's decision to deny Grycowski's application for DDR benefits.  Grycowski appealed that decision to the circuit court, which also upheld the Board's decision.  This appeal follows.

## DISCUSSION

¶29     Grycowski appeals the Board's decision pursuant to WIS. STAT. § 68.13 (2017-18),[1] which permits judicial review by certiorari of the final decision

---

[1]  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

of a municipal board. *See also* WIS. STAT. §§ 68.01, 68.02(1).[2] On certiorari review, this court is "limited to determining whether: (1) the governmental body's decision was within its jurisdiction, (2) the body acted according to law, (3) the decision was arbitrary or oppressive, and (4) the evidence of record substantiates its decision." *State ex rel. Bruskewitz v. City of Madison*, 2001 WI App 233, ¶11, 248 Wis. 2d 297, 635 N.W.2d 797. We review *de novo* the municipality's decision, not the decision of the circuit court. *Id.*

¶30 It is well settled law that on certiorari review "there is a presumption of correctness and validity to a municipality's decision." *Ottman v. Town of Primrose*, 2011 WI 18, ¶48, 332 Wis. 2d 3, 796 N.W.2d 411. In applying this presumption to a municipality's interpretation of its own ordinance, "we will defer to the municipality's interpretation if it is reasonable." *Id.*, ¶60. A municipality's interpretation is not reasonable, however, "if it is contrary to law, if it is clearly contrary to the intent, history, or purpose of the ordinance, or if it is without a rational basis," or if the interpretation "directly contravenes the words of the ordinance[.]" *Id.*, ¶62. The petitioner bears the burden of overcoming this "presumption of correctness." *Id.*, ¶50.

¶31 On appeal, Grycowski argues that the Board acted on an incorrect theory of law in denying his DDR benefits application, citing several particular issues. The crux of Grycowski's argument, however, is that there is a separate standard under the Milwaukee City Charter (MCC) for determining eligibility for

---

[2] We note the circuit court's discussion of the standard of review for administrative agency decisions established in *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, 382 Wis. 2d 496, 914 N.W.2d 21. We agree with the circuit court's conclusion that *Tetra Tech*'s application does not appear to have been extended to the judicial review of municipal decisions, *see id.*, ¶11 n.8., and further note that the cases cited herein with regard to our standard of review for municipal decisions were not abrogated by *Tetra Tech*.

10

DDR benefits for police officers and firefighters, and that this separate standard provides for eligibility based on the cumulative effects of injuries, as opposed to eligibility based on a specific injury that occurred at a definitive time during an act of duty.

¶32     This argument requires that we interpret the relevant portions of the MCC. Like statutory interpretation, the interpretation and application of a municipal ordinance is a question of law that we review *de novo*. **Milwaukee Dist. Council 48 v. Milwaukee Cnty.**, 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153. In conducting an interpretation of municipal ordinances, this court "appl[ies] the same principles used in statutory interpretation." **Id.** To that end, we will interpret the relevant sections of the MCC "in the context in which [they are] used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related [sections]; and reasonably, to avoid absurd or unreasonable results." **State ex rel. Kalal v. Circuit Ct. for Dane Cnty.**, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶33     The section of the MCC which explains DDR benefits is set forth at MCC § 36-05-3. The first subsection states:

> DUTY     DISABILITY     RETIREMENT ALLOWANCE. a. While in Active Service. Any member in active service who shall become permanently and totally incapacitated for duty as the natural and proximate result of *an injury occurring at some definite time and place while in the actual performance of duty* shall, upon filing a request for retirement with the [B]oard … be entitled to a duty disability retirement allowance … provided the medical council or medical panel after a medical examination of such member shall certify that such member is mentally or physically incapacitated for further duty as a result of such service injury and such incapacity is likely to be permanent and such member should be retired.

MCC § 36-05-3-a (emphasis added).

¶34    Grycowski, however, focuses on language in a subsequent subsection which discusses DDR benefits specifically with regard to police officers and firefighters:

> … any fireman or policeman who shall become disabled *as the direct result of injury incurred in the performance of one or more specific acts of duty* shall have a right to receive duty disability benefit during the period of such disability of an amount equal to 75% of the current annual salary for such position which he held at the time of such injury.

MCC § 36-05-3-c-1-a (emphasis added).  It is this language that Grycowski contends creates a separate standard for DDR benefits for police officers.

¶35    The subsection where this language is found is entitled "Firemen and Policemen Duty Disability."  Immediately following that title is a directive that "[f]iremen and policemen *who are eligible for duty disability retirement allowance* shall file a request therefor with the [B]oard on a form provided by it for that purpose; such disability shall be determined as follows[.]"  MCC § 36-05-3-c-1 (emphasis added).  The specific language on which Grycowski relies is located in the following subsection, which describes the application and review process for DDR benefits, depending on date of service and date of application.  That language is in the midst of an explanation regarding the formula for determining the amount of benefits payable to police officers or firefighters deemed to be eligible for DDR benefits:  75% of their *current* annual salary.  *See id.*  This formula is different from a formula set out in a previous subsection that is applied to other City employees eligible for DDR benefits:  those employees would receive 75% of their *final* average salary.  *See* § 36-05-3-b-1.

¶36    In interpreting a statute or ordinance, "[c]ontext is important to meaning." **Kalal**, 271 Wis. 2d 633, ¶46.  The structure of MCC § 36-05-3, when looked at as a whole, begins by stating one general eligibility standard for all City employees, followed by subsections explaining the administrative procedures related to an application for benefits.  In that context, the language relied on by Grycowski is merely distinguishing a formula for determining the amount of benefits payable to police officers and firefighters that is different from other City employees, not creating a separate standard for determining eligibility.

¶37    Moreover, the City points out that there is limiting language in MCC § 36-05-3-c-1—the subsection immediately preceding the subsection where the language at issue is located.  Specifically, that limiting language states that the subsections that follow it are for police officers and firefighters *who are eligible for duty disability retirement allowance*.  **Id.**  The City contends that this limiting language is a reference to the initial requirements of § 36-05-3-a—that the disabling injury had to have occurred *at some definite time and place*—and requires that standard to have been met.  In other words, if police officers and firefighters have met that initial standard, the formula in that following subsection will be applied to determine the amount of their DDR benefits.

¶38    We agree.  In reading the entire section on DDR benefits as a whole rather than considering the subsections in isolation—as required by our canons of construction, *see* **Kalal**, 271 Wis. 2d 633, ¶46—it is reasonable to interpret it as having only one standard for all City employees for determining eligibility for DDR benefits, and not a separate standard for police officers and firefighters.

¶39    That is the interpretation applied by Judge Gerlach.[3]  Therefore, based on that interpretation, Grycowski would have to establish that his disability was caused by an injury to his back that occurred at a "definite time and place" in order to be eligible for DDR benefits.  *See* MCC § 36-05-3-a.

¶40    Thus, we turn to the evidence presented in this case.  In our review of the municipality's decision, we consider only "the record compiled by the municipality and do[] not take any additional evidence on the merits of the decision."  ***Ottman***, 332 Wis. 2d 3, ¶35.  Furthermore, we may not substitute our "view of the evidence for that of the municipality."  ***Id.***, ¶53.  Moreover, we will sustain the findings of fact of the municipality if "any reasonable view of the evidence supports them."  ***Id.***

¶41    Judge Gerlach found that the evidence did not establish that any of the incidents cited by Grycowski directly caused his lower back problems.  Rather, Judge Gerlach found that there was credible evidence that Grycowski had a preexisting degenerative disc disease in his lower back when he joined the police force.

¶42    There is a provision set forth at MCC § 36-05-2-a-3 that bars benefits in cases where there was a pre-existing condition:

> Any pre[]existing physical condition as determined from a medical examination conducted for the [C]ity in connection with the employment of a member shall be deemed a bar to coverage of any disability benefits under this act as a direct or indirect result of such disability.

---

[3] Grycowski argues that Judge Gerlach erred in relying on unpublished decisions of this court for his determination of this issue, pursuant to Wis. Stat. Rule 809.23(3).  However, as the City points out, this rule applies to the courts, and is not applicable to municipal proceedings.

14

¶43    Grycowski asserts that this provision is not applicable to DDR benefits because it is located in a subsection before the DDR benefits subsection. However, "act" is defined in MCC § 36-02-2 as the entirety of the "employe[e]s' retirement act," which is codified as Chapter 36 of the MCC. The bar on eligibility when there is a preexisting condition is clearly stated to be applicable to "*any disability benefits under this act*[.]" *See* MCC § 36-05-2-a-3 (emphasis added). As the provisions for DDR benefits are also located in Chapter 36, the bar on preexisting conditions is applicable to Grycowski's claim for DDR benefits. *See Kalal*, 271 Wis. 2d 633, ¶49 (the "purpose or scope" of an ordinance "may be readily apparent from its plain language").

¶44    Grycowski then argues that the reports of the doctors who performed the IMEs did not specifically make a determination about his preexisting back condition. We disagree. Judge Gerlach found that there was credible evidence that Grycowski had self-reported his previous back problems during his first IME. Further X-rays and MRIs taken during subsequent examinations also indicated that Grycowski had degenerative disc disease. Although some of the medical opinions were conflicting in their conclusions—in part because of Grycowski's "less than total disclosure"—Judge Gerlach observed that when the doctors were made aware of Grycowski's preexisting condition their opinions generally referenced that condition as an underlying cause of Grycowski's back problems.

¶45    Thus, Judge Gerlach concluded that Grycowski's preexisting degenerative disc disease was "at least a contributing cause of his low back disability," particularly because Grycowski had been able to return to full duty after the first two squad accidents. As a result, Judge Gerlach found that Grycowski had not suffered a specific injury that was "in [and] of itself medically significant," but rather that he had suffered "a series of minor on-duty injuries which had a

cumulative effect of aggravating and accelerating his underlying condition." Therefore, although finding that Grycowski is disabled, Judge Gerlach concluded that Grycowski did not meet the standard for eligibility for DDR benefits because none of the injuries Grycowski sustained in the line of duty was the sole cause of his disability. This application of the evidence to the standard set forth in MCC § 36-05-3 is reasonable. *See Ottman*, 332 Wis. 2d 3, ¶60.

¶46 Finally, Grycowski argues that the Board acted arbitrarily in failing to consider the impact that his failure to obtain recertification had on his claim for disability. However, the ability to obtain recertification is not a factor in determining eligibility for DDR benefits. Rather, Grycowski's inability to obtain recertification was a direct effect of his back problems, which Judge Gerlach determined were caused at least in part by a preexisting condition, and were not directly caused by a duty-related injury. Thus, this argument fails.

¶47 In sum, Grycowski has not met his burden of overcoming the presumption of correctness of the Board's interpretation and application of the MCC sections relating to DDR benefits. *See id.*, ¶50. Accordingly, we affirm the order of the circuit court affirming the decision of the Board to deny Grycowski's application for DDR benefits.

*By the Court.*—Order affirmed.