**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 31, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1770**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CV10493**

**IN COURT OF APPEALS
DISTRICT I**

---

MILWAUKEE POLICE ASSOCIATION AND BRIAN J. YOUNG,

    PLAINTIFFS-APPELLANTS,

  V.

BOARD OF FIRE AND POLICE COMMISSIONERS FOR THE CITY OF

MILWAUKEE AND CITY OF MILWAUKEE,

    DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Milwaukee County: JEFFREY A. CONEN, Judge. *Affirmed*.

Before Brash, C.J., Dugan and White, JJ.

¶1 WHITE, J. The Milwaukee Police Association and Brian J. Young (collectively MPA) appeal the circuit court order affirming the decision by the Board of Fire and Police Commissioners for the City of Milwaukee (the Board) to

deny Young a promotion to detective in the Milwaukee Police Department (MPD). We conclude that the Board acted within its authority over the appointment and promotion process for MPD members and exercised that authority when it denied Young the promotion despite his position on the eligible list. Accordingly, we affirm.

## BACKGROUND

¶2      The following facts of this case are undisputed. Young is a police officer with MPD. In December 2015, Young passed a promotional exam and was placed on a list of officers eligible for promotion to detective. The list contained fifty-eight officers, and Young was placed thirty-seventh on the list. The list was adopted and approved by the Board in December 2015. Young then attended detective training school, which he completed in March 2017. In December 2017, then MPD Chief, Edward Flynn, imposed a fifteen day unpaid suspension on Young for a disciplinary issue; the suspension was upheld by the Board.[1]

¶3      On February 21, 2018, MPD Chief, Alfonso Morales (hereinafter, the Chief), submitted nominations "on a waiver basis and subject to [the Board's] approval" for two officers to the rank of detective; one of the officers was Young. The Board's minutes from the March 1, 2018 meeting noted that the Chief subsequently filed a written objection, dated February 28, 2018, to Young's promotion based on Young's disciplinary record.

---

[1] Young appealed the Board's decision to uphold the suspension. This court affirmed the Board's decision. *See Young v. City of Milwaukee Bd. Of Fire & Police Comm'rs.*, No. 2019AP1095, unpublished slip op. (WI App July 7, 2020).

¶4      The minutes for the regular and executive Board meetings on March 15, 2018, both showed that the Chief's objection to Young's promotion was listed and struck through on the agenda.  On March 29, 2018, the Chief submitted a letter to the Board again nominating Young to the rank of detective.  The minutes of the Board meeting on April 5, 2018, reflect that the matter of Young's promotion was considered in executive session.  The Board unanimously voted to deny Young's promotion.  The minutes from the Board meeting on May 17, 2018, reflect that the issue of the Chief's objection to Young's motion, by letter on February 28, 2018, was considered under unfinished business; however, the minutes indicate that "the matter was addressed in closed session, and no further action was necessary on this agenda item."

¶5      In December 2018, MPA sought review of the Board's decision to deny Young's promotion and filed the underlying action against the Board and the City of Milwaukee.[2]  MPA's complaint requested both declaratory judgment and certiorari review of the Board's decision.[3]  The parties ultimately filed cross-motions for summary judgment, and the court concluded that MPA did not meet

---

[2] For ease of reading, we will continue to refer to the defendant parties as the Board.

[3] The circuit court construed MPA's action as a statutory appeal of the Board's decision under WIS. STAT. § 62.50(21) (2019-20).  As such, the court reviewed the action under the statutory certiorari standard, putting the burden on MPA to show that the Board did not keep within its jurisdiction; that the Board did not proceed on a correct theory of law; and that the evidence in the record did not reasonably support the decision of the Board.  *See Grycowski v. Milwaukee Emps.' Ret. Sys./Annuity & Pension Bd.*, 2021 WI App 7, ¶30, 395 Wis. 2d 722, 953 N.W.2d 904.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

MPA also included a wage claim in its complaint before the circuit court, but the wage claim is not at issue in this appeal.  Therefore, we do not address it further.

its burden and upheld the Board decision denying Young's promotion. MPA appeals.[4]

## DISCUSSION

¶6      On appeal, MPA argues that Young was entitled to the promotion to the rank of detective based on the Rules of the Board of the Fire and Police Commissioners for the City of Milwaukee (the Rules) and the Board had no discretion to deny the promotion. The Board argues it acted within its authority and discretion to deny Young's promotion. To resolve this case, we consider first the proper standard of review, which is raised under both statutory certiorari review under WIS. STAT. § 62.50 and declaratory judgment under WIS. STAT. § 806.04. Then we interpret and analyze the relevant statutes and Rules. Finally, we apply the facts of Young's action to the legal standard.

¶7      Ultimately, we conclude that under either standard, the Board has the exclusive authority over appointments for police and fire departments under the statutes and Rules, which inherently means it has the power to deny a promotion to any person, even one on the eligible list. The Board is tasked with adopting Rules "designed to secure the best service for the public in each department." Sec. 62.50(3)(b). We conclude it has acted within its authority in this matter and we affirm its decision.

---

[4] During the pendency of this appeal, this court requested additional briefing from the parties on the issue of the Board's authority under the application procedures in Rule VII or any other part of the Rules. Both parties responded by letter brief.

*Standard of Review*

¶8     The Board argues first that our review is limited to the certiorari action because "[d]eclaratory judgment provides prospective rather than remedial relief." *PRN Assocs. LLC v. DOA*, 2009 WI 53, ¶52, 317 Wis. 2d 656, 766 N.W.2d 559.   The Board contends that Young raises no issues that were not present at the time of the Board decision; therefore, his recourse is certiorari. MPA contends that our review is not limited to certiorari.  It contends that while the prospective use of declaratory judgment may be "preferred … declaratory relief is appropriate wherever it will serve a useful purpose." *Lister v. Board of Regents of Univ. Wis. Sys.*, 72 Wis. 2d 282, 307, 240 N.W.2d 610 (1976). Further, MPA asserts that a declaration of the proper interpretation of the promotion and appointment process would be helpful for all MPA members who may end up in the same situation as Young.

¶9     MPA contends that the circuit court erred when it decided the action was governed by the certiorari review under WIS. STAT. § 62.50(21).  MPA asserts that review process only applies to appeals from discipline—which could not include claims arising from a complaint that the Board failed to comply with its own rules governing the promotion and appointment process.  We conclude that the certiorari process was an appropriate method to address Young's complaint, but that declaratory judgment was not inappropriate.  We accept MPA's request to declare the proper interpretation of the Rules, as well as address the certiorari standard.

¶10    "On certiorari, we review the decision of the Board, not the decision of the circuit court." *Schoen v. Board of Fire & Police Comm'rs of City of Milwaukee*, 2015 WI App 95, ¶14, 366 Wis. 2d 279, 873 N.W.2d 232.  Further,

our review of a statutory certiorari appeal "is limited to whether the Board '(1) acted within its jurisdiction; (2) proceeded on a correct theory of law; (3) was arbitrary, oppressive, or unreasonable; or (4) might have reasonably made the order or finding that it made based on the evidence.'" *Sliwinski v. Board of Fire & Police Comm'rs of City of Milwaukee*, 2006 WI App 27, ¶12, 289 Wis. 2d 422, 711 N.W.2d 271 (citation omitted). This court independently reviews questions of law and the extent of the Board's authority under the statutory scheme. *Schoen*, 366 Wis. 2d 279, ¶14.

¶11 A declaratory judgment is governed by Wisconsin's Uniform Declaratory Judgments Act, WIS. STAT. § 806.04, which allows a court to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." "A court must be presented with a justiciable controversy before it may exercise its jurisdiction over a claim for declaratory judgment." *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶28, 309 Wis. 2d 365, 749 N.W.2d 211.[5]

*The Board's authority*

¶12 To determine whether the Board acted within its jurisdiction and proceeded on a correct theory of law, we must resolve the question of the Board's authority over the appointment and promotion process. Therefore, we must interpret WIS. STAT. § 62.50 and the administrative rules of the Board of the Fire

---

[5] There are four factors that determine whether a conflict is justiciable. *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶29, 309 Wis. 2d 365, 749 N.W.2d 211. First, it must be a "controversy in which a claim of right is asserted against one who has an interest in contesting it." *Id.* Second, it must be a controversy "between persons whose interests are adverse." *Id.* Third, "[t]he party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest." *Id.* Fourth, [t]he issue involved in the controversy must be ripe for judicial determination." *Id.* We note that the Board does not argue that MPA has not brought a justiciable controversy.

and Police Commissioners City of Milwaukee (the Rules). "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). The nature and scope of an administrative agency's authority is a matter of statutory interpretation or construction. *See GTE N. Inc. v. Public Serv. Comm'n of Wisconsin*, 176 Wis. 2d 559, 564, 500 N.W.2d 284 (1993). This court independently reviews "the application of a statute and an administrative rule to undisputed facts[.]" *American Fam. Mut. Ins. Co. v. Haas*, 2017 WI App 83, ¶4, 379 Wis. 2d 336, 904 N.W.2d 830.

¶13     Pursuant to WIS. STAT. § 62.50(2), "[n]o person may be appointed to any position either on the police force or in the fire department of the city, except with the approval of the [B]oard." The Board is provided the authority to promulgate rules "to govern the selection and appointment of persons employed in the police and fire departments of the city" by § 62.50(3)(b). The appointment and promotion process is covered by Rule XI. Within that Rule, section one states that appointments to sworn, non-exempt positions "will be made from eligible lists established by the Board."[6] Rule XI § 1. Section three states that "[w]henever there is a vacancy in a sworn position in either department which is to be filled from an eligible list, the Board shall make the appointment in numerical order from the appropriate list." Rule XI § 3. Section four states that "[t]he Chief may object to a candidate on an eligible list for a sworn position by notifying the Board

---

[6] There is no dispute that this case involves a sworn, non-exempt position. *See* Rule V § 3. Furthermore, there are additional rules that govern other types of positions, such as non-sworn positions, that are not at issue here. *See, e.g.*, Rule XI § 3(b) (providing the process for appointments of non-sworn positions).

in writing of the reasons for such objection. The Board shall then interview the candidate and determine whether the name of the candidate will remain on the eligible list." Rule XI § 4. Section five states that "[a]ppointments or promotions to positions in either department require Board approval and are not effective until approved by a majority of the Board at a meeting of the Board." Rule XI § 5.

¶14 Under the plain meaning of both the statute and the Rules, the "approval" of the Board is required for a person to be appointed to a position. *See* WIS. STAT. § 62.50(2) (providing that appointments occur "with the approval of the [B]oard"); Rule XI § 5 (providing that appointments "require Board approval" and must be "approved by a majority of the Board at a meeting of the Board" in order to be effective). The definition of the word "approval" reinforces that the Board has to make a choice in order to comply with the statutory mandate. Approval means "the act of approving" or "certification as to acceptability." *Approval*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). In its verb form, approve means "to judge and find commendable or acceptable" or "to vote into effect." *Approve*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). At its essence, the logical interpretation of the statute and Rule is that the Board must have discretion in deciding whether a candidate is or is not acceptable, that the authority of approval is also the authority not to approve. Therefore, we conclude and declare that under the law, the Board had authority to deny an appointment at this stage.

*Application of the law to Young's promotion*

¶15 We now turn to MPA's arguments. MPA asserts that the Board had no discretion to deny Young the promotion to detective because he complied with the Rules: he satisfied the qualifications to compete for a position within the

department, he participated in the required examinations, he was successfully named to the eligible list, and the Board did not have a pending objection from the Chief at the time of appointment. MPA contends that because the Board failed to address Young's promotion while the Chief's objection was pending and failed to follow the interview procedure for that objection, the Board had a statutory mandate to promote Young when his position on the eligibility list arose.

¶16    MPA's argument fails for two reasons. First, the Board has the exclusive authority over appointments, not the Chief. Therefore, the Chief's objection is not dispositive to an appointment. This court has previously recognized that the "exclusive authority over the hiring, removal and disciplining of police and fire department personnel is vested in the Board of Fire and Police Commissioners (the Board) by sec. 62.50, Stats." *State ex rel. Becker v. Common Council of City of Milwaukee*, 101 Wis. 2d 680, 688, 305 N.W.2d 178 (Ct. App. 1981). "The Board is also vested with exclusive control over appointments[,] … suspension and removal." *Id.* (footnotes removed). Rule XI § 4 provides that a department chief may object to an appointment, but it does not give the department chief the power to remove that person—instead the Rules requires the Board to interview that person and decide whether the person should remain on

9

the eligible list. The department chief's authority is limited by the Board, not the other way around.[7]

¶17    Second, the Board is tasked with "secur[ing] the best service for the public in each department." WIS. STAT. § 62.50(3)(b). A recurring principle in the Rules is that the Board only appoints (or promotes) persons it considers to be qualified. The Rules devote an entire chapter to qualifications of candidates, including that "every applicant … shall be of good moral character[.]" Rule VI § 2. In the Application Procedures chapter, the Rule sets forth that "[t]he Board shall refuse to accept an application from, shall exclude from the selection process, or shall remove from the eligible list: … (a) any person who does not meet the qualifications for the position, either at time of application or appointment[.]" Rule VII § 5(a). This rule requires the Board to "remove from the eligible list" any unqualified candidates at the time of "appointment." Therefore, we see that the Board's authority to approve appointments is reiterated throughout the Rules. We may interpret the Board's action to use its authority from Rule VII to exclude

---

[7] That a department chief's authority is subordinate to the Board is illustrated in Rule II on the scope of the authority of the Board, which provides that "[t]he Board may prescribe rules for the governance of each department. A Chief may not suspend any rule prescribed by the Board." Rule II § 3(b). "The Chief of each department may propose rules for the governance of the department. Any rule proposed by a Chief shall be subject to review and approval by the Board. Any rule proposed by a Chief shall not take effect until the rule is reviewed and approved by the Board." Rule II § 3(c). "The Chief of each department shall provide the Board with current standard operating procedures or other directives. Nothing in a standard operating procedure or other directive shall be used to circumvent a Board or department rule." Rule II § 4. It would be illogical for a department chief to have more authority than the Board in this singular function of the appointment process.

Young at the time of his proposed appointment for his disciplinary records that occurred after he was placed on the eligible list.[8]

¶18    MPA contends that the Board acted unlawfully because it could have adopted rules to govern a separate process for it to review and approve or deny appointments, but it did not.  This argument fails as well.  The Board did not need to create a special procedure in the Rules to allow it to deny an appointment because the power to deny an appointment is part of the power to grant an appointment.   Under the Rules, the Board must take two actions before an appointment is effective.  First, the Board must approve the applicant; and second, a majority of the Board must agree to the approval at a meeting.  Rule XI § 5.  It would add surplusage into the Rules and render the Board's authority a nullity if the Board could not exercise a meaningful choice in this stage of the process.  *See State ex rel. Kalal*, 271 Wis. 2d 633, ¶46.

¶19    MPA's arguments misconstrue the appointment process in the Rules and, if applied, would diminish the Board's authority.  When the Board acts to approve an appointment, it must comply with the procedures it adopted within its own rules; nevertheless, that procedure does not compel the Board to rubber stamp the appointment of any applicant who makes it to the eligible list.  Inherent in the term "eligible list" is that a person on that list is eligible for an appointment, not guaranteed.  To be eligible is to be "fitted or qualified to be chosen or used" or "worthy to be chosen or selected."  *Eligible*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993).  To be found "eligible" does not make the

---

[8] As the Dissent points out, the Board does not ask this court to rely upon Rule VII to decide this case.  *See* Dissent ¶49.  However, we conclude that Rule VII provides another example of the Board's ultimate authority over which persons are appointed to positions in MPD.

11

promotion or appointment automatic. The plain meaning of the language of the Rules does not indicate that the Board relinquishes its authority to decide to grant or deny approval for appointments.

¶20 We conclude that the Rules, as written and adopted, are sufficiently clear that the majority of the Board must approve a candidate in order for the candidate to advance. Our interpretation of the Rules relies on their plain meaning and further, it harmonizes with the Board providing meaningful oversight of the police and fire departments. The Board, through its Rules, has promulgated a procedure for the appointment of an eligible person; however, the final decision on whether an appointment occurs rests with the Board at its discretion to approve or deny.

¶21 Having determined the question of law with regard to the Board's authority, we turn to the remaining certiorari appeal standard. The Board argues that MPA has not overcome the presumption of correctness afforded to an agency decision. *See State ex rel. Ruthenberg v. Annuity & Pension Bd. of City of Milwaukee*, 89 Wis. 2d 463, 473, 278 N.W.2d 835 (1979) ("In a review of a decision on a writ of certiorari there is a presumption that the Board acted according to law and the official decision is correct and the weight and credibility of the evidence cannot be assessed.").

¶22 The Board argues that MPA's arguments fail to show that the Board violated its duties under the four factors considered when reviewing a certiorari petition. First, the Board acted within its jurisdiction because by the plain meaning of the WIS. STAT. § 62.50, the Board has exclusive authority over appointment of MPD members. We agree. Second, the Board asserts the Board acted according to the law because although the Rules created a process for

eligibility for appointment, the Rules did not require a person on the eligible list to be promoted. We agree with the Board's position that it acted within its jurisdiction and proceeded under a correct standard of law because it had authority to approve or deny promotions. *See Schoen*, 366 Wis. 2d 279, ¶14.

¶23 Turning to the third factor, the Board contends its decision was not "arbitrary, oppressive, or unreasonable" because there was no evidence in the record that the Board's decision was an unfair expansion on the previously imposed discipline. *See Sliwinski,* 289 Wis. 2d 422, ¶12. MPA argues that the Board acted arbitrarily and capriciously when it imposed its will and did not comply with its own rules. MPA contends that the process of appointment does not allow for the Board to reject an appointment unless it is addressing the Chief's objection. MPA also argues that consideration of the prior suspension unfairly applies more punishment on a closed matter.

¶24 We note here that MPA's primary emphasis in pursuing the declaratory judgment on appeal is the expanded record that was developed in discovery before the circuit court. It asserts that the Board did not object to this discovery at that time and may not restrict the record on appeal. At issue is whether to consider MPA's depositions of Board staff and several of the Board commissioners. The record reflects that depositions from two of the commissioners who voted against Young's promotion showed that they both "mistakenly believed that the Board's rules prevented an officer from being promoted if the officer had been disciplined in the past." However, a deposition from a third commissioner stated that he took Young's disciplinary record into consideration as part of the total review of his possible promotion. Further, the deposition of the executive director of the Board stated that the commissioners generally considered the entire record of a person eligible for a promotion, but

13

confirmed there was no rule precluding a disciplined officer from attaining a promotion. MPA argues that by "using the mere existence of the prior discipline to prevent Young's promotion, the Board necessarily expanded the scope and application of the discipline imposed beyond the terms of the written decision" imposing the suspension in 2017.

¶25 Although the Board contends that matters outside of the certiorari record may not be considered, it argues that if this court considers the additional factual record, the denial of a promotion is not a form of discipline.[9] Therefore, the Board contends that it is not unreasonable if the commissioners considered Young's prior suspension. The Board asserts it would create an absurd reading of the statutes and Rules to bar the Board from considering the entirety of the record of a person eligible for appointment or promotion. To the extent that we interpret MPA to posit that the Board could not consider an applicant or potential appointee's entire record, we conclude MPA's reading of the Rules is unreasonable. MPA has not shown that the Board's consideration of Young's disciplinary record was arbitrary or capricious. We conclude that the Board acted within its discretion, not in an arbitrary and capricious way, but arising from a reasonable, rational basis. *See State ex rel. Ruthenberg*, 89 Wis. 2d at 473.

¶26 Finally, the fourth factor is that the Board "might have reasonably made the order … based on the evidence[.]" *See Sliwinski,* 289 Wis. 2d 422, ¶12

---

[9] The Board's argument is premised on the language in WIS. STAT. § 62.50(17)(b) which holds that an officer may appeal to the Board if the officer is disciplined by being "suspended, reduced in rank, suspended and reduced in rank, or discharged[.]" We note that MPA appears to have endorsed that the denial of a promotion is not a disciplinary action when it asserted that the disciplinary statutory certiorari process under § 62.50(21) does not govern this appeal, because the denial of a promotion is not a form of discipline.

(citation omitted). The Board agues this point is undisputed; nevertheless, we address the standard. This fourth factor "inquiry is limited to whether there is substantial evidence to support the [agency's] decision." ***Van Ermen v. DHSS***, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978).[10] "Substantial evidence is evidence that is relevant, credible, probative, and of a quantum upon which a reasonable fact finder could base a conclusion." ***Cornwell Pers. Assocs., Ltd. v. LIRC***, 175 Wis. 2d 537, 544, 499 N.W.2d 705 (Ct. App. 1993). "We may not substitute our judgment for that" for that of the administrative board. ***Von Arx v. Schwarz***, 185 Wis. 2d 645, 656, 517 N.W.2d 540 (Ct. App. 1994). "If substantial evidence supports the [Board's] determination, it must be affirmed even though the evidence may support a contrary determination." ***Id.***

¶27 The evidentiary record is limited in this matter. The minutes from the regular session on April 5, 2018, show that Young's promotion and denial was discussed during an executive, closed meeting of the Board. Such employment-related decision-making in closed session is allowed by WIS. STAT. § 19.85(1)(c); however, the Rules do not permit anyone "to record that meeting through the utilization of audiotape, videotape, stenographic reporter or by any other means." Rule III § 1(c). The record reflects, from the commissioner and staff deposition testimony, that the Board's decision-making was premised on concerns about Young's disciplinary record. This satisfies the standard for substantial evidence. Ultimately, we conclude that MPA has not overcome the presumption of correctness afforded to an agency decision. *See **State ex rel. Ruthenberg***, 89 Wis. 2d at 473.

---

[10] We note that we rely on generalized certiorari review standards for definitions.

¶28     Although we accept MPA's request to declare the Board's authority over appointments, we decline to address its "employment double jeopardy" argument.[11]  MPA fails to provide Wisconsin legal authority in support of this argument.  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").

## CONCLUSION

¶29     For the reasons stated above, we conclude that the Board had the authority to deny Young's promotion.  It acted within its jurisdiction and the law, its decision was not arbitrary or capricious, and its decision was reasonable based upon the record.  *See Schoen*, 366 Wis. 2d 279, ¶14.  Further, we declare that under the Rules and by statute, the Board maintains power to deny an appointment at any stage.  *See* WIS. STAT. § 806.04.  Accordingly, we affirm the circuit court order upholding the Board's decision.

    *By the Court.*—Order affirmed.

    Not recommended for publication in the official reports.

---

[11] MPA concedes that there are no published Wisconsin cases on employment double jeopardy.  Instead, MPA offers that a treatise discussing this topic has been cited in other contexts in Wisconsin appellate court decisions.  However, our examination suggests this treatise covers a multitude of topics, and MPA failed to quote a relevant excerpt.  In Young's prior case before this court, this legal theory was raised and we also rejected the argument for failing to provide Wisconsin authority.  *See Young*, No. 2019AP1095, unpublished slip op. ¶36.  Further, in this case, the Board asserts that the treatise does not support MPA's position in any case.  MPA ignores the topic in its reply brief, which we take as a concession about the relevance of the treatise.  *See United Co-op. v. Frontier FS Co-op.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578.

No.    **2021AP1770(D)**

¶30    DUGAN, J (*dissenting*).   Because I conclude that pursuant to the rules adopted by the Board[1] regarding promotions, the Board was bound to promote Young, and I respectfully dissent.

## BACKGROUND

¶31    Young was a police officer with the Milwaukee Police Department (MPD).   In December 2015, pursuant to the rules adopted by the Board for promotions, Young took and passed a promotional exam and was placed on a list of officers eligible for promotion to Detective.   The list contained fifty-eight officers, and Young was placed thirty-seventh on the list.   The Board approved this list according to its rules.[2]

¶32    The Chief of Police, Alfonso Morales, recommended Young for promotion on February 21, 2018.   However, on February 28, 2018, the Chief filed an objection to Young's promotion based on Young's disciplinary record from December 2017.[3]

---

[1] Like the Majority, I refer to the Board of Fire and Police Commissioners for the city of Milwaukee as the Board.

[2] Rule X § 1(a) on eligible lists states, "After an examination, an eligible list shall be prepared containing the names of the candidates in the order of their relative ranking."   Once the list is prepared, Rule X § 1(b) provides that "[a]ll eligible lists, consisting of name and ranking of each candidate, shall be presented for adoption."

[3] Young was disciplined with a fifteen-day suspension in December 2017.

1

¶33 At the Board's meeting on March 1, 2018, Young's promotion and the Chief's corresponding objection were on the agenda, but never discussed. The Board met again on March 15, 2018, and the same agenda items regarding Young's promotion and the Chief's objection were on the agenda. However, Young's promotion and the Chief's objection were not discussed at this meeting.

¶34 The Chief subsequently withdrew his objection and filed a second recommendation to promote Young to Detective, dated March 29, 2018. The recommendation stated:

> This member was put through a timely internal vetting process where in the member's entire record was reviewed, including disciplines, open and closed investigations, administrative matters (e.g. use of force reports, squad car accidents, criminal investigations, citizen complaints), fitness, and history with the FPC. I certify that this member is in good standing with the Department and suitable for promotion consistent with my statutory duties….

¶35 At a meeting held on April 5, 2018, the Board denied Young's promotion.[4] The agenda for the Board's April meeting contained the Chief's recommendation to promote Young from March 29, 2018—it did not contain any reference to the Chief's objection from February 28, 2018.

¶36 The Board met again in May 2018. Its agenda listed "Objection to Detective Promotion" under the category of unfinished business, and the meeting

---

[4] The parties' briefs include reasons why the Board denied Young's promotion at this meeting. As a result of my conclusion today, I need not discuss why the Board denied Young's promotion, and the simple fact that the Board denied Young's promotion at the April meeting is sufficient.

minutes reflect that this agenda item was "addressed in closed session, and no further action was necessary."

¶37    In December 2018, the MPA[5] sought review of the Board's decision to deny Young's promotion and filed this action, which was styled as both one for declaratory judgment and certiorari review.[6]  The parties ultimately filed cross-motions for summary judgment, and the circuit court affirmed the Board's decision to deny Young's promotion.  The MPA appeals.

## DISCUSSION

¶38    On appeal, the MPA argues that Young was entitled to the promotion to Detective based on the Board's own rules under which the Board had no discretion to deny his promotion.  It argues that by denying Young's promotion the Board exceeded its authority and acted arbitrarily and capriciously.

¶39    In making its argument, the MPA acknowledges that candidates for promotion must be approved by the Board, but the MPA argues that, based on the Board's own rules, in the case of a sworn non-exempt position such as Detective, pursuant to the rules it adopted, the Board does not have discretion to deny Young's promotion without an objection from the Chief.  Rather, the MPA argues that, without a pending objection from the Chief, the Board is required by its own rules to approve officers for promotion based on the numerical order of the officers on the list of eligible officers that was previously approved by the Board.

---

[5] Like the Majority, I refer to the Milwaukee Police Association and Brian J. Young collectively as the MPA.

[6] The MPA also included a wage claim in its complaint, but the wage claim is not at issue in this appeal.  Therefore, like the Majority, I do not address it further.

Because Young's application was accepted, he was selected to test for the position of detective, he had completed all testing requirements, he was placed on the detective eligibility list, the list was approved by the Board, and Young was numerically next on the list for promotion, the MPA argues that the Board had no authority to deny Young's promotion, given that the Chief had withdrawn his objection. As explained below, I agree.[7]

### A. Relevant Statutes and Rules

¶40    I begin by reviewing the relevant statutes to determine whether there is any language in the statutes that would limit the Board from creating the rules for promotion that exist in this case. Pursuant to WIS. STAT. § 62.50(2) (2019-20)[8], "[n]o person may be appointed to any position either on the police force or in the fire department of the city, except with the approval of the [B]oard." The Board is then provided the broad authority to promulgate rules "to govern the selection and appointment of persons employed in the police and fire departments of the city" by § 62.50(3)(b). Neither the Board nor the Majority cite to any authority that limits how the Board may proceed in exercising its authority to promulgate those rules.

---

[7] I agree with the Majority's discussion of the standard of review for both certiorari review and declaratory judgment. However, unlike the Majority, I conclude that the Board's rules for promotion set forth a clear procedure for Young's promotion and that the Board violated the very rules that it created in denying Young's promotion to Detective. Therefore, I conclude that the Board exceeded its authority, acted arbitrarily and capriciously, and did not proceed on a correct theory of law and that Young had the right to be promoted pursuant to the Board's rules. Thus, under a certiorari review or a declaratory judgment review, the Board's decision should be reversed.

[8] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶41    Pursuant to this authority, the Board developed the following rules. Rule XI § 3(a) states that "[w]henever there is a vacancy in a sworn position in either department which is to be filled from an eligible list, the Board *shall* make the appointment *in numerical order* from the appropriate list." (Emphasis added.) Rule XI § 4 then states, "The Chief may object to a candidate on an eligible list for a sworn position by notifying the Board in writing of the reasons for such objection. The Board shall then interview the candidate and determine whether the name of the candidate will remain on the eligible list." Rule XI § 5 further states, "Appointments or promotions to positions in either department require Board approval and are not effective until approved by a majority of the Board at a meeting of the Board."

¶42    Pursuant to the Board's rules, applicants for promotions must pass multiple examinations and testing procedures that are approved by the Board. *See* Rules VIII, IX. "Examinations may consist of one or more tests which the Board may deem necessary …. All tests shall fairly and reliably evaluate the applicant for fitness to hold the position." Rule VIII § 4. "Scoring of examinations will occur without reference to the identity of a candidate." Rule IX § 2. The Board is intimately involved throughout and approved the process.

¶43    Courts interpret the relevant statutes and the Board's rules *de novo* using the principles of statutory interpretation. *See **Seider v. O'Connell***, 2000 WI 76, ¶26, 236 Wis. 2d 211, 612 N.W.2d 659. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). Courts give the language "its common ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special

5

definitional meaning." *Id.* The purpose "is to determine what the statute means so that it may be given its full, proper, and intended effect." *Id.*, ¶44.

> *B. The Board Violated Its Rules and Exceeded Its Authority When It Denied Young's Promotion*

¶44    I conclude that Rule XI plainly states that the Board was required to promote Young, given that Young's application was accepted, he was selected to test for the position, he had completed all testing requirements, and he was placed on the detective eligibility list, there was no pending objection from the Chief, and Young was numerically next on the list. Therefore, the Board violated its rules and exceeded its authority when it denied Young's promotion.

¶45    Rule XI § 1 mandates that the Board shall promote officers to detective from eligible lists. In this case, there was an eligible list, and Young was on it. Thus, the Board was required to promote Young to Detective using the pre-approved list.

¶46    Furthermore, Rule XI § 3(a) mandates that the Board make appointments from the list based on "numerical order," without any other consideration. Consequently, when Young was numerically the next officer on the list for promotion, the Board had no discretion not to approve Young's promotion and it had no authority to deny it, unless the Chief objected. The rule plainly states that Young's promotion was based on his numerical order on the list and there was nothing for the Board to consider in approving his promotion after the Chief had withdrawn his objection. "[A]gencies are bound by their own rules. Such rules define the boundaries of an agency's authority, and when it abandons those rules the agency is acting beyond its authority." *State ex rel. Riley v. DHSS*, 151 Wis. 2d 618, 625, 445 N.W.2d 693 (Ct. App. 1989) (citation omitted).

6

¶47 The Board and the Majority point to the authority provided to the Board in the statutes and contend that the Board did not violate its rules or exceed its authority when it denied Young's promotion because it has exclusive authority over making promotions. *See **State ex rel. Becker v. Common Council of Milwaukee***, 101 Wis. 2d 680, 688, 305 N.W.2d 178 (Ct. App. 1981). The Board and the Majority contend that the Board is statutorily required to approve all promotions and that the MPA's interpretation leads to an absurd result that renders the Board's statutory authority of approval as mere surplusage. The Board and the Majority assert that if the Board is required to approve promotions based solely on a candidate's numerically listed order with no ability to consider the candidate absent an objection from the Chief, its power of approval is a nullity and the Chief would be given absolute control over appointments, a result which they assert is contrary to statute.

¶48 However, as noted above, pursuant to WIS. STAT. § 62.50(3)(b), the Board has broad authority to promulgate rules "to govern the selection and appointment of persons employed in the police and fire departments in the city." While the Board undisputedly has to approve Young's promotion before it is considered effective, I must also consider the rules that the Board imposed on itself, and under the rules it created, it did not provide itself with the authority to do anything but consider Young's numerical order on the eligible list when considering his promotion unless the Chief objected to his promotion. "Administrative rules enacted pursuant to statutory rulemaking authority have the force and effect of law in Wisconsin." ***State ex rel. Staples v. DHSS***, 115 Wis. 2d 363, 367, 340 N.W.2d 194 (1983). Rule XI is clear that the Board promotes officers numerically based on the eligible list and Young's promotion was required to be made in this case based on his "numerical order." The only

7

exception to this procedure would be if the Chief had filed an objection, which would then give the Board the authority to interview Young and determine if Young should remain on the list of eligible candidates. Without having a pending objection from the Chief in this case, the Board was bound to promote Young based on his numerical order pursuant to its own rules that it created. Such a result is not contrary to statute because the Board passed these rules to define its statutory power of approval of promotions.

¶49 In support of its conclusion that "the Board has the exclusive authority over appointments for police and fire departments under the statutes and Rules, which inherently means it has the power to deny a promotion to any person, even one on the eligibility list," the Majority states:

> In the Application Procedures chapter, the Rule set forth that "[t]he Board shall refuse to accept an application from, shall exclude from the selection process, or shall remove from the eligible list: … (a) any person who does not meet the qualifications for the position, either at time of application or appointment[.]" Rule VII § 5(a). This rule requires the Board to "remove from the eligible list" any unqualified candidates at the time of "appointment." Therefore, we see that the Board's authority to approve appointments is reiterated throughout the Rules. We may interpret the Board's action to use its authority from Rule VII to exclude Young at the time of his proposed appointment for his disciplinary records that occurred after he was placed on the eligible list.[9]

However, as the Majority notes that during the time this court was reviewing this case, we directed the parties to submit letter briefs, in part, addressing the following issue: "Does [Rule VII § 5] have any application to the issues on

---

[9] *See* Majority, ¶17.

appeal, and if so, cite what authority supports that it does, explain how it applies…." Both parties submitted letter briefs.

¶50 In its letter brief, the Board argued that "Rule VII does not have any bearing on this case, and this Court should decide the appeal on the Parties existing briefs." The Board goes on to state that "Rule VI establishes the minimum requirements necessary to apply for MPD positions and Rule VII, in pertinent part enforces those requirements." It then asserts that "Rule VII Section (5)(a) requires either the rejection of an application, or exclusion from further consideration of any applicant that does not meet the qualification for [a] position…." The Board then argues that because Young did not fail to meet the qualifications for the position, Rule VII § 5 did not apply to this case. Thus, the Board's own interpretation of its Rules does not support the Majority's conclusion.[10]

¶51 Additionally, I note that the Board had the opportunity to take action on the Chief's objection but failed to do so. The Chief made his objection on February 28, 2018, and the Board held two meetings in March 2018, while that objection remained pending. By the time the Board took action in April, the Chief had withdrawn his objection and filed a second recommendation to promote Young, and therefore, the Board was then required to promote Young based on his

---

[10] In its letter brief, the MPA first argued that Rule VII did not apply to this case because it deals with the application procedure and Young's application was accepted, he was selected to test for the position, he had completed all testing requirements, and he was placed on the detective eligibility list. Alternatively, the MPA argued that even if the Rule did apply to the promotions process, then if the Board truly believed that Young was not qualified to be promoted, the Board would have been required under the Rule to remove him from the eligibility list, something that never occurred.

numerical order on the eligible list. Because it failed to do so, I conclude that it violated its rules and exceeded its authority.

¶52 I also note that in the end, the Board could have used its authority under WIS. STAT. § 62.50(3)(b) to create rules providing it with more flexibility to consider candidates when approving them for promotion, and it could also have created a rule prohibiting candidates from being promoted if they have been disciplined in the past or had any objection, pending or withdrawn, filed by the Chief. The fact of the matter is that no such rule exists. The Board is bound by those rules that it has created, and those rules require that Young be promoted based on his numerical order on the approved eligible list. Having failed to follow its rules in this regard, the Board violated its rules, exceeded its authority, acted arbitrarily, and did not proceed on a correct theory of law.

¶53 Consequently I would reverse the order of the circuit court affirming the Board's decision, and I would remand this case with instructions to enter judgment in favor of the MPA.[11] Thus, I respectfully dissent.

---

[11] Having concluded that the Board's rules do not allow it to deny Young's promotion without a pending objection from the Chief, I decline to address the remaining arguments regarding any expansion of previously imposed discipline and whether the employment double jeopardy doctrine applies. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).