TRANSAMERICA INSURANCE COMPANY and another, Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and another, Respondents.

*No. 201. Argued February 29, 1972.—Decided March 28, 1972.*
(Also reported in 195 N. W. 2d 656.)

274

For the appellants there was a brief by *Kivett & Kasdorf*, attorneys, and *Nonald J. Lewis* and *Conrad G. Goodkind* of counsel, all of Milwaukee, and oral argument by *Mr. Lewis*.

A brief was filed for the respondent Department of Industry, Labor & Human Relations by *Robert W. Warren*, attorney general, and *Gordon Samuelsen*, assistant attorney general, and for the respondent Israel Santiago by *Adrian P. Schoone* of Racine, and oral argument by *Mr. Samuelsen* and *Mr. Schoone*.

ROBERT W. HANSEN, J. This appeal brings a dispute as to the department finding that the claimant was totally permanently disabled—an issue as to whether claimants in workmen's compensation cases can be required to pursue vocational rehabilitation—and a challenge based on the absence of stated reasons for the department setting aside an examiner's findings. All three matters require comment.

*Was there credible evidence to sustain the department finding of total permanent disability?*

The trial court held that: "There is credible evidence to sustain the commission's finding of total permanent disability." We agree, both as to the "credible evidence" test on review and the application of the test to the facts here. As to the test, the law in this state is ". . . well settled that the determination of disability, its cause, its extent, or duration, present questions of fact and the industrial commission's findings thereon become conclusive if supported by credible evidence." [1]

Here that credible evidence is found in the testimony of the treating physician, a neurosurgeon, who had last

[1] *Reich v. ILHR Department* (1968), 40 Wis. 2d 244, 262, 161 N. W. 2d 878.

examined the claimant the day before the hearing. He concluded: ". . . I don't believe that he can carry on the same type of work—heavy physical labor or farm work—and in that respect it is total and permanent [disability]." Impairment of earning capacity is one important measuring stick as to degree of disability.[2] Additionally, the medical witness testified to atrophy of calf muscles, weakness of ankles, complete loss of sensation to pinprick below the mid-back, marked difficulty in walking without braces, inability to lift feet and muscle spasms. His testimony clearly supports the finding that the claimant is ". . . permanently and totally disabled from performing labor at his trade . . . or such labor as he was employed in at the time of the accident as well as being permanently and totally disabled from performing manual or other labor in any other suitable employment. . . ."[3] By statute, loss of both legs results in permanent total disability, and, for all practical purposes, the claimant here has lost the use of both his legs.

Appellants claim that the medical evidence would warrant a different conclusion as to the degree of permanent disability. However, the test is ". . . not whether there

[2] *Northern States Power Co. v. Industrial Comm.* (1947), 252 Wis. 70, 76, 30 N. W. 2d 217; *Kurschner v. ILHR Department* (1968), 40 Wis. 2d 10, 18, 161 N. W. 2d 213; *Kohler Co. v. ILHR Department* (1969), 42 Wis. 2d 396, 405, 406, 167 N. W. 2d 431. *See also: Kurschner v. ILHR Department, supra,* at pages 19, 20, holding that ". . . Testimony must be offered that will permit a comparison between appellant's injury and an injury that would cause permanent total disability for industrial use. . . ."

[3] *McDonald v. Industrial Comm.* (1917), 165 Wis. 372, 375, 376, 162 N. W. 345, sustaining a commission finding of permanent total disability despite medical testimony that the claimant could do work if it did not involve much walking or stooping. *See also: Milwaukee Western Fuel Co. v. Industrial Comm.* (1944), 245 Wis. 334, 335, 336, 13 N. W. 2d 919, sustaining finding of total permanent disability despite ability to do housework and shovel snow.

is credible evidence in the record to sustain a finding the commission did not make, but whether there is any credible evidence to sustain the finding the commission did make." [4] We agree with the trial court that there is.

*Was there credible evidence to sustain the department's finding that a program of vocational training was not warranted?*

The trial court held that: "There is credible evidence to sustain the commission's finding 'that a program of vocational rehabilitation is not warranted . . . .' " We agree. On the question of fact presented, there is ample credible evidence in this record to sustain the department's finding that in this case "a program of vocational rehabilitation is not warranted." The department found that the nature of the applicant's disability, his limited education and language barrier justified such finding, and they do. The nature and extent of claimant's disability, his inability to do any heavy work, his having pain on motion, his difficulty in standing or sitting for any length of time, the limitations on movement, add up to supporting the "not warranted" finding. His limited education, going only to the second grade in grammar school, plus his inability to speak or understand English, increase the difficulties of his being provided appropriate vocational training and decrease the likelihood of his self-improvement through it. As the vocational counselor testified in this case, these factors make training and providing training "more difficult." As the department found, they warrant finding vocational training "not warranted."

However, the trial court went further to hold that the department finding as to vocational training not being warranted ". . . is unnecessary to the decision in this

[4] *Unruh v. Industrial Comm.* (1959), 8 Wis. 2d 394, 398, 99 N. W. 2d 182, quoted with approval in *Mednicoff v. ILHR Department,* ante, p. 7, 194 N. W. 2d 670.

case. . . ." The trial court found an "inescapable legal conclusion," that an injured workman may not be coerced into taking rehabilitation under threat of a penalty of reduced compensation benefits. Respondents' brief enthusiastically endorses this holding, arguing that ". . . Any system of compulsory vocational rehabilitation would be doomed to failure because the success of the employee in vocational rehabilitation would be penalized by a decrease in his workmen's compensation benefits." Appellants take an exactly contrary position, asserting that "sound public policy requires that society utilize the latent potential of all of its members. . ." and contending that a compensation claimant ought not be encouraged or permitted to ". . . perpetuate his own disability. . . ." We do not join the discussion, pro or con, on the public policy aspects of the dispute. Ours is the more limited function of applying the law as it is ". . . irrespective of whether [we] consider[s] the policy underlying the law to be good or bad policy. . . ." [5]

Under the Wisconsin Workmen's Compensation Act, compensation is to be denied to an employee who aggravates, causes or continues his disability by his ". . . unreasonable refusal or neglect to submit to or follow any competent and reasonable medical or surgical treatment . . . ." [6] Thus compensation claimants are required to mitigate their damages, at least in the area of reasonable medical or surgical treatment. In an early case, this court agreed, stating the question to be whether or not society should ". . . recompense a workman for a disability caused by his unreasonable refusal to adopt such means to effect a recovery as an ordinarily prudent person would use under like circumstances and which would result in the removal of the disability . . . ." [7]

---

[5] 20 Am. Jur. 2d, *Courts*, pp. 430, 431, sec. 64.

[6] Sec. 102.42 (7), Stats.

[7] *Lesh v. Illinois Steel Co.* (1916), 163 Wis. 124, 131, 132, 157 N. W. 539, the court holding: "The proposition that an applicant

In that case, an even earlier decision was cited to identify the purpose of the workmen's "comp" law to be that of ". . . mutuality of interest between employers, employees, and the public. . ." with ". . . each actor . . . charged with the duty of promoting the mutual interests . . . ." [8] Times have changed since these early decisions, but, among the changes that time has brought is a broader definition of the terms "medical" and "surgical." The doctor does more than prescribe medicines; the surgeon does more than make an incision. To aid the full recovery of the patient, either or .both may find required and recommend a routine of appropriate muscle-building exercises or physical therapy treatments or even vocational rehabilitation training. Such ancillary aids, in some situations, may be as important to full recovery as pills prescribed or operations performed.

Overly ambitious it would be to spell out situations in which competent medical evidence would establish that a claimant's cooperation in physical therapy or vocational rehabilitation would be an essential element of full medical or surgical treatment. All that we do here is not to judicially close and lock the door to the possibility that, in appropriate cases, the ILHR Department would be warranted in, at the least, postponing the determination of permanent disability for a reasonable period of time until after claimant completes a competent and reasonable course of physical therapy or vocational rehabilitation as an essential part of the treatment required .for full recovery and minimization of damages. That may well be what the hearing examiner in this case sought

---

. . . may create, continue, or even increase his disability by his wilful, unreasonable, and negligent conduct, claim compensation from his employer for his disability so caused, and thereby cast the burden of his wrongful act upon society in general, is not only utterly repugnant to all principles of law, but is abhorrent to that sense of justice common to all mankind. . . ."

[8] *Milwaukee v. Miller* (1913), 154 Wis. 652, 671, 144 N. W. 188.

or set out to do, although deferring a finding as to permanent physical disability for the six months' period would seem a more appropriate route to follow than, as he recommended, determining permanent disability with "further proceedings" reserved for a future date. Agreeing with the department finding that vocational training in this case was "not warranted," there is no need here to do more than find incorrect the trial court ruling that such finding was "unnecessary."

*Does the failure of the ILHR Department to state its reasons for setting aside the findings of its hearing examiner constitute a denial of due process?*

By statute when a petition is filed, as was here done, seeking review of a hearing examiner's findings, ". . . The commission shall either affirm, reverse, set aside or modify such findings or order in whole or in part . . . ." [9] Here the department set aside the examiner's findings on the ground of "probable error," so that the matter was ". . . as completely open before the commission as though it had never been brought before the examiner at all." [10] The department, first reviewing the record and consulting with its examiner, then made its own determination and findings, as it had the right to do. [11] The findings before us for review are those of the department, not those earlier made by the examiner. [12] However, such review in this case is made diffi-

[9] Sec. 102.18 (3), Stats.

[10] *Tiffany v. Industrial Comm.* (1937), 225 Wis. 187, 194, 273 N. W. 519.

[11] ". . . The commission in reviewing findings and order of an examiner does not act as an appellate body but under its powers in an original proceeding. The commission is to make its own determination. . . ." *State v. Industrial Comm.* (1940), 233 Wis. 461, 465, 289 N. W. 769.

[12] ". . . The findings this court reviews on appeal are those of the Industrial Commission, not those of the trial examiner and we cannot ignore and jump over the findings of the Industrial

cult by the fact that the department's findings are entirely conclusory in nature.

The fish bone that sticks in the throat is that the setting aside of the examiner's findings by the department on the ground of "probable error" is accompanied by no memorandum opinion or statement as to where the probability of error was found. Also, in making its own independent findings, differing from those of the hearing examiner, no memorandum opinion or statements of reasons for reaching a different result or conclusion accompanied the department's findings. Appellants contend that the total absence of any statement of reasons for setting aside the examiner's findings and total absence of any statement of reasons or basis for making the department's findings constitutes a denial of due process, and requires reversal.

This court has held that, where credibility of witnesses is involved, it is a denial of due process for an administrative agency to make a finding on credibility without the benefit of ". . . the findings, conclusions, and impressions of the testimony of each hearing officer who conducted any part of the hearing. . . ." [13] In another case, this court reversed commission findings because ". . . the instant record does not show that the commission, in making its findings, had the benefit of the examiner's impressions of the material witnesses on which he grounded his conclusions of credibility . . . ." [14] Where the question is one of credibility, we

Commission to reach those of the examiner which were set aside. . ." *Anheuser Busch, Inc. v. Industrial Comm.* (1966), 29 Wis. 2d 685, 692, 139 N. W. 2d 652.

[13] *Shawley v. Industrial Comm.* (1962), 16 Wis. 2d 535, 542, 114 N. W. 2d 872.

[14] *Braun v. Industrial Comm.* (1967), 36 Wis. 2d 48, 57, 58, 153 N. W. 2d 81, this court stating at page 57: ". . . In situations where an examiner hears conflicting testimony and makes findings based upon the credibility of witnesses, and the commission thereafter reverses its examiner and makes contrary findings, the record

have stated that ". . . special deference is to be paid [by the agency setting aside an examiner's findings] to the face-to-face examiner or fact-finder." [15] But we have gone farther. While in a recent case we did ". . . stop short of requiring a written opinion in *all* cases . . ." (Emphasis supplied.) this court there stated:

". . . it is clear that only a memorandum opinion accompanying the reversal of the examiners' findings could present to a reviewing court what was being sought: to wit, some indication why the testimony believed by the examiners who heard it presented was deemed not worthy of belief by the agency heads and similarly some indication as to why the testimony not believed by its examiners was believed by the agency heads. It would have been proper, prudent and helpful to the reviewing court if the agency had accompanied its supplemented findings with a statement or memorandum opinion covering this subject. . . ." [16]

It appears unfortunately clear that what this court suggested as "proper, prudent and helpful to the reviewing court" is not likely to be provided. In oral argument, the assistant attorney general stated in effect that unless this court so orders the ILHR Department has no intention of accompanying either its reversal of examiner's findings or making of independent findings with any accompanying opinion stating its reasons or grounds for so doing. Apparently, a "very minimal" [17] compliance with the "bare bones requirement of *Braun*," [18] to wit: consulta-

should affirmatively show that the commission had the benefit of the examiner's personal impressions of the material witnesses. . . . The demands of due process cannot be satisfied with anything less."

[15] *Briggs & Stratton Corp. v. ILHR Department* (1969), 43 Wis. 2d 398, 410, 168 N. W. 2d 817.

[16] *Burton v. ILHR Department* (1969), 43 Wis. 2d 218, 225, 168 N. W. 2d 196, 170 N. W. 2d 695.

[17] *Briggs & Stratton Corp. v. ILHR Department, supra,* at page 410.

[18] *Burton v. ILHR Department, supra,* at page 224.

tion with the examiner and review of the record, are considered sufficient insurance against reversal on absence of due process grounds. The emphasis in *Burton* on the importance of an opinion or stated reasons [19] may have led the department to conclude that nothing more is needed and nothing more is involved than the convenience of a reviewing court. More than that is involved. The parties to litigation, workmen's compensation claims included, are entitled to know, not only that the department set aside the findings of an examiner but why it did so—not only what independent findings the department found proper, but on what basis and evidence it made such findings. Particularly is this true where credibility of witnesses is involved. Fundamental fairness requires that administrative agencies, as well as courts, set forth the reasons why a fact-finder's findings are being set aside or reversed, and spell out the basis for independent findings substituted.

Given the fact of consultation with the hearing examiner, and granting that an accompanying memorandum opinion was requested, not required, in *Burton*, we do not here reverse for the department's failure to provide a memorandum opinion to explain its reversal of the examiner's findings and its making of independent findings.[20] There is additional reason to except this case

---

[19] ". . . Where there is nothing in the record dealing with the reversal of the recommendation of the examiner on an issue of credibility, the reviewing court cannot speculate or conjure up some appropriate explanation. The total absence of reasons stated for the reversing of [examiner's] recommendations takes from the commission or departmental findings an additional strength that it would otherwise have on appeal." *Id.* at page 225.

[20] In *Transport Oil, Inc. v. Cummings*, ante, p. 256, 195 N. W. 2d 649, decided this date, a decision of the ILHR Department is reversed and remanded because a necessary finding was not made. In the instant case, though there was no memorandum opinion explaining the findings, sufficient findings were made.

from the requirement that there be a memorandum opinion when an examiner's findings are set aside on the issue of credibility of witnesses. The only testimony on which the examiner's findings could rest is hardly credible as a matter of law. Sole foundation for a 45 percent permanent disability finding was the statement of Dr. Coles that he himself described as "an arbitrary statement," deriving from his belief that "It is hard to think of somebody who is not employable in one form or another." Additionally, the doctor's statement was based on completion of a course of vocational training that we have agreed was "not warranted" in this case. So, at its best, it reflected a future possibility, not a present situation.[21] The question of denial of due process is closer than the others in this case, but we find reversal here not required. However, we do not expect to have again to search a record either for the basis of independent findings as to credibility of witnesses or the reasons for department setting aside an examiner's findings as "probable error." Trial courts can be expected to reverse department findings and remand for the completion of the record whenever the department rejects the findings of its examiner and makes its own findings involving credibility of witnesses and fails to accompany such reversal and making of its own findings with an opinion stating why it has rejected the facts found by the examiner and why it has made its own and differing findings of fact.

*By the Court.*—Judgment affirmed.

---

[21] ". . . findings of fact in workmen's compensation cases are not to be based upon mere possibilities, or upon speculation or conjecture. . . ." *Franckowiak v. Industrial Comm.* (1960), 12 Wis. 2d 85, 90, 106 N. W. 2d 51.