COURT OF APPEALS
DECISION
DATED AND FILED

May 4, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP800**

Cir. Ct. No. **2019CV6942**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

BARTELT CUSTOM AUTOMOTIVE, INC.,

PLAINTIFF-APPELLANT,

V.

LABOR AND INDUSTRY REVIEW COMMISSION AND KEVIN D. WARLOW,

DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Milwaukee County: LAURA GRAMLING PEREZ, Judge. *Reversed and cause remanded with directions.*

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Bartelt Custom Automotive, Inc. (BCA), appeals an order of the circuit court affirming an order of the Labor and Industry Review Commission (LIRC) which found that BCA failed to provide Kevin Warlow with suitable employment following a work-related injury, in violation of WIS. STAT. § 102.35(3) (2019-20).[1] BCA argues that LIRC's determination, which reversed the decision of an Administrative Law Judge (ALJ), violated its due process rights because LIRC made a witness credibility determination without having the benefit of the ALJ's personal impressions of the witnesses. We agree. Accordingly, we reverse and remand the matter to LIRC for a new hearing.

## BACKGROUND

¶2 BCA is a company that performs metal fabrication and machining. In September 2016, BCA hired Warlow as a welder. Although BCA initially contacted Warlow regarding an opening as a press brake operator, Warlow expressed disinterest in the position and was eventually hired as a welder.

¶3 On January 9, 2017, Warlow sustained a work-related injury and was on medical leave for seven weeks. Warlow received workers compensation benefits for his injury. In the interim, BCA hired a general laborer to help with a variety of tasks, including, but not limited to welding, assembly, and press brake operation. When Warlow returned to work on February 28, 2017, BCA's president, Doug Bartelt, told Warlow that work was slow and that Warlow would be laid off. A press brake operator position was available at that time, but it does not appear as though Bartelt offered that position to Warlow.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4      On October 4, 2017, Warlow filed a claim pursuant to WIS. STAT. § 102.35(3), arguing that BCA unreasonably refused to rehire Warlow when he returned to work.  At a hearing before ALJ William Phillips, Jr., Warlow and Bartelt both testified.  Warlow testified that when he returned to work, Bartelt told him that work was "slow" and that he would be laid off.  Warlow indicated that he was not offered a brake press operator position at that time, stating that the only discussion he ever had with Bartelt regarding working as a press brake operator took place before he was hired as a welder in September 2016.  Warlow stated that he was not interested in the press brake operator position in September 2016.

¶5      Bartelt also testified, telling the ALJ that prior to Warlow's return, he hired a general laborer to replace a discharged employee, but that he did not have any welding work available when Warlow returned.  Bartelt admitted that a press brake operator position was available.  Bartelt was also asked about his answer to Warlow's hearing application, dated December 11, 2017, which contained a handwritten statement stating:  "but offered [Warlow] a press brake position [on February 28, 2017,] which he declined."  Bartelt stated that he did not recall writing that statement, nor did he recall whether he actually offered Warlow the press brake operator position.  Bartelt did recall, however, that Warlow was "very adamant about … not wanting to run a press brake" when Warlow was hired in September 2016 because Warlow indicated that he was scared of the press brake machine.

¶6      ALJ Phillips found that BCA did not unreasonably refuse to rehire Warlow.  In his decision, ALJ Phillips stated:

> While I accept Bartelt's representations that he had no welding work available on February 28, 2017, he was relying on a pre-employment conversation of September 201[6] relative to the fabricator's job.

> Be that as it may, the record supports the proposition that BCA did not behave in an unreasonable fashion that would rise to liability. On the contrary, when Warlow was released to return to work, BCA had no suitable employment available and in the months following the separation, BCA only had work for which the applicant was not qualified.

¶7 Warlow petitioned LIRC for review of the ALJ's decision. LIRC reversed ALJ Phillips's decision, determining that BCA had an obligation to offer Warlow the press brake operator position when he returned to work after his injury. LIRC's decision stated:

> The fact that there was a discussion of the press brake position at the time of the applicant's original hire, and at that time the applicant expressed disinterest in the position, does not mean that the employer was under no obligation to offer him the press brake position available on February 28, 2017. At the time of hire, the applicant obviously was given the opportunity to work as a welder. If there had been no welding position available at that time the applicant might very well have accepted a press brake position. Under the relevant law … the applicant was entitled to be informed of the press brake position that was open and available on February 28, 2017, and to be offered that position. The employer did not establish any reasonable cause for not offering it to him, and given his status as a returning, injured employee, the failure to do so was not fair, just, or fit under the circumstances.

¶8 LIRC's decision also noted that it was unable to consult with ALJ Phillips regarding his impressions of witness credibility because ALJ Phillips passed away before LIRC issued its decision. LIRC stated, however, that its decision was not based on witness credibility, but rather, the uncontested fact that BCA had employment available when Warlow returned. Specifically, LIRC stated:

> [In] his decision ALJ Phillips made no specific factual findings contrary to those made by the commission, with the exception of the following finding: "... when Warlow was released to return to work, BCA had no suitable

employment available[.]" This finding was demonstrably incorrect because even Douglas Bartelt acknowledged that the press brake position was available, and that the applicant was qualified to perform that job. ALJ Phillips did not find that Bartelt offered this position to the applicant on February 28, 2017. The commission's decision rests upon the uncontested fact that there was suitable employment available when the applicant returned, and upon the failure of the employer to carry its burden to demonstrate that this employment was offered to the applicant.

(Footnote omitted.)

¶9 BCA sought judicial review of LIRC's decision in the circuit court arguing that it was denied due process because LIRC made credibility determinations without the benefit of ALJ Phillips's personal witness impressions and without the benefit of the hearing transcript, as it had not yet been prepared when LIRC issued its decision. The circuit court affirmed LIRC. This appeal follows.

**DISCUSSION**

¶10 On appeal, BCA argues that it was denied due process when LIRC determined that BCA had suitable employment for Warlow upon his return because: (1) LIRC's decision involved credibility determinations made without input from ALJ Phillips and without the benefit of the hearing transcript; (2) LIRC erroneously interpreted the term "suitable employment" pursuant to WIS. STAT. § 102.35(3); and (3) LIRC was unaware of contradictory testimony taken at the hearing regarding whether BCA had reasonable cause not to offer Warlow the press brake operator position because LIRC did not have the hearing transcript when it issued its decision.

¶11     On appeal, we review LIRC's decision and not that of the circuit court. *See Stoughton Trailers, Inc. v. LIRC*, 2007 WI 105, ¶26, 303 Wis. 2d 514, 735 N.W.2d 477.  LIRC's findings of fact are conclusive on appeal as long as they are supported by credible and substantial evidence.  *Michels Pipeline Constr., Inc. v. LIRC*, 197 Wis. 2d 927, 931, 541 N.W.2d 241 (Ct. App. 1995); *see also* WIS. STAT. § 102.23(6).

¶12     Where a party seeks review of an ALJ's findings or order, LIRC is not bound by the ALJ's decision, as LIRC, "on review, may either affirm, reverse or modify the findings or order in whole or in part, or set aside the findings and order and remand … for further proceedings.  Such actions shall be based on a review of the evidence submitted."  WIS. STAT. § 111.39(5)(b).  Our review, then, is of LIRC's findings, not those of the ALJ.  *See Xcel Energy Servs., Inc. v. LIRC*, 2013 WI 64, ¶56, 349 Wis. 2d 234, 833 N.W.2d 665.

¶13     Additionally, the Wisconsin Supreme Court has held that for issues of credibility, "special deference is to be paid (by the agency setting aside an examiner's findings) to the face-to-face examiner or fact-finder." *Transamerica Ins. Co. v. DILHR*, 54 Wis. 2d 272, 282-83, 195 N.W.2d 656 (1972) (quotation marks and citation omitted).  When an administrative agency reverses the examiner's credibility, concerns of due process and "[f]undamental fairness require[] that administrative agencies, as well as courts, set forth the reasons why a fact-finder's findings are being set aside or reversed, and spell out the basis for independent findings substituted."  *Id.* at 284.  This reasoning is typically set forth in a memorandum opinion, which accompanies a LIRC decision. *See id.* at 283.

¶14     Here, LIRC contends that it did not reverse ALJ Phillips on the basis of credibility; rather, LIRC contends that it reasonably inferred that Warlow's disinterest in the press brake operator position may have been temporary and contingent upon the circumstances, making the job suitable employment when Warlow returned from his injury.

¶15     Contrary to LIRC's assertions, we conclude that LIRC's findings were speculative and indeed relied upon credibility determinations. At the time LIRC issued its decision, it did not have the hearing transcript available and had no way of knowing the status of Warlow's interest in the press brake operator position. LIRC assumed that Warlow's disinterest may have been temporary, but offered no support for this assumption.

¶16     Moreover, and again contrary to LIRC's assertions, LIRC's decision involved a credibility determination that was different from the determination made by ALJ Phillips. LIRC found that Warlow "credibly" testified that he was not offered the press brake operator position upon his return to work and that the position availability was inconsistent with Bartelt's contention that "there was barely enough work for the employer's then-current employees." On the other hand, ALJ Phillips "accept[ed]" Bartelt's reliance on his "pre-employment conversation" with Warlow when determining that BCA did not have suitable employment available for Warlow. While neither LIRC nor ALJ Phillips explicitly addressed witness credibility, both made implicit findings that ran contrary to one another.

¶17     Because of ALJ Phillips's passing, LIRC was unable to discuss his impressions of the witnesses' credibility. ALJ Phillips's notes from the hearing do not address the credibility issue. LIRC's decision, therefore, was based on

speculation that Warlow *might have* accepted the press brake operator position if offered to him, and on its implicit finding that Warlow was the more credible witness. We conclude that a new hearing before an ALJ is warranted. We therefore reverse LIRC's decision and remand the matter for a new hearing. Accordingly, we need not address BCA's remaining arguments.

¶18 For the foregoing reasons, we reverse and remand with directions.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.