COURT OF APPEALS
DECISION
DATED AND FILED

March 18, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP1685**

**STATE OF WISCONSIN**

Cir. Ct. No.  2023CV7107

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN EX REL. BENJEAN F. LARA,

PETITIONER-APPELLANT,

V.

CITY OF MILWAUKEE, CITY OF MILWAUKEE ANNUITY AND PENSION BOARD AND MILWAUKEE EMPLOYEES' RETIREMENT SYSTEM,

RESPONDENTS-RESPONDENTS.

APPEAL from an order of the circuit court for Milwaukee County: THOMAS J. McADAMS, Judge. *Affirmed.*

Before White, C.J., Colón, P.J., and Geenen, J.

¶1      WHITE, C.J.   Benjean F. Lara appeals from the circuit court order affirming, under certiorari review, the decision by the City of Milwaukee Annuity & Pension Board to deny his application for Duty Disability Retirement

(DDR) benefits. Lara argues that the Pension Board, and its co-respondents, the City of Milwaukee and the Employees' Retirement System of the City of Milwaukee (ERS), improperly served as the decision maker for both the initial and final determination of his application for benefits, failed to enforce the decision made by the independent hearing examiner (IHE); violated statutory time limits; improperly returned the case to the IHE for reassessment; and unreasonably relied on inconsistent medical reports that did not constitute substantial evidence. Upon review, we affirm.

## BACKGROUND

¶2 Lara was employed as a Milwaukee Police Department (MPD) officer for 17 years when he was injured from hitting his head while working at an MPD facility on September 23, 2019. Lara went to the emergency room after the fall and then sought care for a concussion. After the injury, Lara was evaluated by numerous medical professionals including specialists in physical medicine; physical, vision, and speech therapy; rehabilitation; orthopedics; and counseling. Shortly after his injury, Lara began seeing Dr. Gerald Nora, a physician specializing in brain injury rehabilitation, who provided ongoing care and treatment for a "mild traumatic brain injury [from the] work-related incident."

¶3 Lara pursued a worker's compensation claim and ultimately filed the application for DDR benefits at issue here in April 2021.[1] DDR benefits are administered under the City of Milwaukee City Charter chapter 36, which governs

---

[1] The record reflects that Lara also applied for and was denied ordinary disability benefits from ERS at the same time. Nonetheless, Lara has only developed arguments based on the DDR benefits denial. Issues not raised on appeal are deemed abandoned. *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 493, 588 N.W.2d 285 (Ct. App. 1998).

ERS and its administration of pension, retirement, and disability benefits. MILWAUKEE, WI, CITY CHARTER (MCC) § 36-01, 36-05-3. An employee who is "permanently and totally incapacitated for duty as the natural and proximate result of an injury occurring at some definite time and place while in the actual performance of duty" may request a "duty disability retirement allowance." MCC § 36-05-3. For police and fire department employees specifically, eligibility is determined as follows: (1) an applying member must be examined by the Medical Council, (2) the Medical Council "shall make the examination, determination and certification" required in the form proscribed by the Pension Board; (3) if the Medical Council recommends that the applicant is entitled to DDR benefits, the Pension Board "shall thereupon grant such allowance." MCC § 36-05-3-c-1-a.

¶4 Lara underwent multiple Independent Medical Examinations (IMEs) conducted by specialists in neurology, psychiatry, psychology, and neuropsychology from November 2019 to April 2022. Although the IME reports offered different reasons to explain Lara's symptoms, they all concluded that Lara was not disabled as a result of the workplace injury on September 23, 2019.

¶5 We recite from each IME report presented in the administrative appeal.

- Dr. Robert Graebner performed a neurological evaluation and concluded that Lara's disability was not a result of the concussion in the workplace injury, but from an unrelated mood disorder.

- Dr. David Osmon performed a neuropsychological evaluation and concluded that Lara could not return to normal officer duty because of emotional distress caused by pre-existing psychological defense mechanisms.

- Forensic psychiatrist Dr. Caroline Palmer performed a psychiatric evaluation and concluded that Lara did not suffer from any psychiatric condition but was instead feigning symptoms or malingering, based on objective measure testing to assess legitimate symptoms.

- Dr. Sara Swanson performed a neuropsychological evaluation and concluded that Lara's symptom reporting far exceeded what would be expected with the reported injury, that his performance on objective tests was "non-credible," and that his reported symptoms could only be accounted for by a psychiatric illness or malingering. She concluded that Lara at most suffered a mild concussion because the ER report and CT imaging did not show any objective indicia of a head injury. She observed that Lara's claim that his symptoms worsened over time was not consistent with a legitimate traumatic brain injury (TBI).

¶6 The Medical Council reviewed Lara's application for DDR benefits, determined he did not meet the criteria, and recommended denying these benefits. MCC § 36-01, 36-05-3, 36-15-12. At the July 27, 2022 meeting, the Pension Board unanimously voted to accept the Medical Council's certifications of its recommendations to approve or deny DDR and ordinary disability applications and re-examinations of eight persons, including Lara. The Pension Board notified Lara by letter that it had accepted the Medical Council's recommendation that his application be denied.

¶7     With that denial, Lara began the municipal administrative review and appeal process in WIS. STAT. ch. 68 (2023-24).[2] This process allows a denied benefit claimant to challenge the Medical Council's determination in two parts. First, the claimant may request an independent review of the denial, pursuant to WIS. STAT. § 68.08. Lara petitioned for the independent review, in which the medical evidence and reports in the record were reviewed. The independent reviewer issued a report concluding that Lara's injuries were not a result of the fall on September 23, 2019, and recommending that the Medical Council's decision to deny benefits be affirmed.

¶8     If the claimant is still dissatisfied after the independent review, the claimant may then request an administrative appeal hearing, at which both the appellant and the municipality may be represented by attorneys, present evidence, and examine witnesses. WIS. STAT. §§ 68.01, 68.08-68.11. The hearing may "be conducted by an impartial person … designated to conduct the hearing and report to the decision maker." *Id.* Next, the municipal authority must "provide an impartial decision maker … who did not participate in making or reviewing the initial determination" to review the IHE's report and make the final determination. Sec. 68.11(2). The decision maker makes a final determination and delivers it to the appellant within 20 days of the completion of the hearing and the filing of any briefs. WIS. STAT. § 68.12.

¶9     Lara requested an administrative appeal hearing, which was conducted by the IHE over two dates: January 12, 2023 and March 2, 2023. The IHE heard testimony from Lara; his wife; MPD Officer Anthony Rivera, who

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

knew Lara from both shared past police work and military service; a physical therapist who treated Lara; Dr. Nora; and Dr. Swanson.

¶10    Dr. Nora testified that to a reasonable degree of medical certainty, Lara suffered a TBI as a result of his workplace accident, that the injury was the direct cause of his disability, and that he was permanently disabled. He described Lara's symptoms, which included executive dysfunction, emotional dysregulation, short-term memory loss, and vision dysfunction, as classic symptoms of a brain injury. Conversely, Dr. Swanson testified that Lara's subjective, self-reporting of his symptoms was inconsistent, and that in objective testing, he showed a definite embellishment of neurologic symptoms.

¶11    On March 14, 2023, the IHE issued his report finding that Lara qualified for DDR benefits. The IHE's report found: (1) that Lara suffered a concussion in the workplace injury on September 23, 2019; (2) it was disputed whether his injuries were permanent, but there were "no opinions to the required degree of medical certainty" that Lara was feigning or malingering; (3) Dr. Nora's testimony indicated by a preponderance of the evidence that Lara suffered permanent impairment as a result of the workplace injury; and (4) Lara's permanent medical condition prevents him from performing as an MPD officer in any capacity and he is permanently disabled from doing so. The IHE's report stated he was overruling the Pension Board's denial of Lara's DDR status.

¶12    The last page of the IHE's report was titled, "Appeal"; it informed the parties that within 45 days of the report, the parties could submit written briefs

to the Pension Board setting forth their respective positions.[3]  The appeal briefs were to be directed to the executive director of ERS.  The appeal would be addressed at the next Pension Board meeting following the receipt of the briefs.  Finally, the notice provided that "within (10) ten days of its final decision, the Board shall deliver to the appellant its written determination stating the reasons therefore.  Such determinations shall be final."

¶13    On April 4, 2023, the City of Milwaukee filed a brief with the Pension Board arguing that the IHE's report omitted and mischaracterized key evidence such that the report was unreliable.  The City noted that it rarely disputed an IHE report, that the purpose of the IHE is to aid the Pension Board's decision-making process, and that the Pension Board retained ultimate authority over whether to grant or deny a benefits application.[4]  The City argued that the IHE's

---

[3] We note that the ANNUITY AND PENSION BOARD OF THE EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF MILWAUKEE RULES AND REGULATION RULES provide additional procedures for an appeal under the WIS. STAT. ch. 68 framework including those set forth in the appeal instruction in the IHE's original report.  As those rules would not supersede the statute, we do not address them in any detail.  *See Conway v. Board of Police & Fire Comm'rs of City of Madison*, 2003 WI 53, ¶28, 262 Wis. 2d 1, 662 N.W.2d 335 ("An administrative agency has only those powers that are expressly conferred or necessarily implied from the statutory provisions under which it operates."); MCC § 36-15-6 ("Subject to the limitations of this act … the board shall … establish rules and regulations … in order to carry out the provisions of this act"); BOARD RULES I(A) ("The Board is governed by the provisions of Chapter 36 of the Milwaukee City Charter").

[4] We note that this brief is the only time that the City appears as itself and we follow its example.  The Pension Board, ERS, and the City are co-respondents in this matter and they are represented by the City of Milwaukee City Attorney's Office in this and similar matters.  The administrative orders in the record have been denoted as ERS proceedings, with Lara as the applicant and the Pension Board as the respondent; however, the correspondence with Lara appeared to come from the Pension Board.  Lara argues that it is a conflict of interest to have the Pension Board appear in multiple roles (and appear by the same attorney) in this adversarial proceeding over which it asserts it makes the final determination.  While we acknowledge his complaint and also have some concern about the structure of these proceedings in general, Lara has not presented any evidence of an actual conflict.

report misstated Officer Rivera's testimony[5] and erred when it relied on Dr. Nora's opinion because his opinion was based on Lara's subjective complaints and not objective testing.

¶14 On April 25, 2023, Lara submitted a brief to the Pension Board, noting his objection to the IHE's report being considered anything but the final determination of the administrative appeal, pursuant to WIS. STAT. §§ 68.11, 68.12. Lara argued that this was a case of credibility; the IHE heard the evidence and determined Lara and Dr. Nora were most credible. Lara disputed the value of the IME reports, arguing that Dr. Nora's testimony negated Dr. Osmon's IME report, and that Dr. Palmer's IME report contradicted and negated Dr. Graebner's IME report. Lara asserted that Officer Rivera's testimony was immaterial to the final determination because he is not a medical expert.

¶15 The Pension Board returned the IHE's report to him for a reassessment of the evidence. On July 17, 2023, the IHE submitted the "Independent Hearing Examiner's Decision of Reassessment of Decision." The IHE concluded that he continued to recommend that Lara be considered eligible for DDR benefits, after consideration of the hearing transcripts, the parties' post-hearing briefs, the reconsideration request, and additional briefing he requested of the parties. The IHE's reassessment report dismissed the issue of malingering as "not involved." The IHE found that Dr. Swanson could not come to a firm conclusion that Lara was malingering. The IHE did not give weight to the IME reports of either Dr. Graebner or Dr. Osmon, neither of whom testified. He found

---

[5] The IHE's report stated that Officer Rivera only noticed changes in Lara's behavior after the incident. The City argues that the transcripts show that Officer Rivera testified to observing Lara declining physically and mentally at least six months before the concussion.

those IME reports contradicted and conflicted with Dr. Palmer's IME report. The IHE gave great weight to Dr. Nora's consistent opinion, based on direct, on-going treatment, and his reference of the neuro-optometrist's reports, which offered objective evidence of a brain injury.

¶16 At the August 29, 2023 meeting, the Pension Board voted to consider Lara's claim in closed session.[6] The Pension Board issued the "Final Determination" written decision the same day, denying Lara's claim for DDR benefits. The decision began with the Pension Board's authority to make the final determination and its request for reassessment by the IHE because the original report was defective due to material errors. The final determination established three reasons it rejected the IHE's recommendation: (1) the IHE's dismissal of multiple experts who opined that Lara was malingering; (2) multiple factual errors in the IHE's findings; and (3) the conclusory nature of both of the IHE's reports.

¶17 In the final determination, the Pension Board found that while the four IME reports separately concluded that Lara was not disabled as a result of his workplace injury, the IHE's original report did not discuss two of the IME reports and mischaracterized the other two. While the IHE gave great weight to Dr. Nora's testimony, the Pension Board considered Dr. Nora's opinion to be suspect because he relied heavily on Lara's subjective reporting of his symptoms, failed to review the emergency room report made immediately after the injury, and correlated Lara's cognitive deficits with the injury despite evidence otherwise.

---

[6] The record reflects that after briefing was completed in April 2023, Lara's DDR claim was on the agenda for the May, June, and July 2023 Pension Board meetings. However, the Pension Board held over the decision for additional consideration before making the final determination at the August 29, 2023 meeting, and sending a written final determination by letter the same day.

¶18 The Pension Board discussed factual errors in both of the IHE's reports that were refuted by the transcripts and documentary evidence. Although the IHE dismissed the testimony of Officer Rivera as non-corroborative, the transcript showed he noticed a decline in Lara's physical and mental state at least six months before the workplace injury. The IHE noted that Dr. Swanson did not use the term malingering, but failed to consider her consistent opinion that Lara was exaggerating his symptoms. Dr. Swanson testified she did not see objective evidence of malingering or feigning. The Pension Board found it could not substantiate a finding that Lara suffered a workplace injury that directly contributed to his disabling conditions.

¶19 Pursuant to WIS. STAT. § 68.13, Lara pursued judicial review of the Pension Board's decision in a petition and complaint for review by certiorari. The circuit court reviewed briefing and the administrative record, and issued a decision affirming the Pension Board's decision and denying Lara's request for the court to overturn the Pension Board's decision on certiorari. Lara now appeals.

## DISCUSSION

¶20 This appeal reaches us by certiorari. "Certiorari is a mechanism by which a court may test the validity of a decision rendered by a municipality, administrative agency, or other quasi-judicial tribunal." *State ex rel. City of Waukesha v. Waukesha Bd. of Rev.*, 2021 WI 89, ¶18, 399 Wis. 2d 696, 967 N.W.2d 460. As such, we review the decision of the Pension Board, not the circuit court's order. *Gehin v. Wisconsin Grp. Ins. Bd.*, 2005 WI 16, ¶5, 278 Wis. 2d 111, 692 N.W.2d 572. "The scope of our review is limited to the record of the administrative proceedings[.]" *State ex rel. Harris v. Annuity & Pension Bd., Emp. Ret. Sys. of Milwaukee*, 87 Wis. 2d 646, 651, 275 N.W.2d 668 (1979).

10

¶21     In the review of a certiorari action, our inquiry is narrow. *City of Waukesha*, 399 Wis. 2d 696, ¶19. We address only whether the Pension Board's actions: (1) kept within its jurisdiction; (2) proceeded on a correct theory of law; (3) were arbitrary, oppressive, or unreasonable, representing its will and not its judgment; and (4) were supported by evidence that it might reasonably make the order or determination in question. *Harris*, 87 Wis. 2d at 651-52. Neither this court nor the circuit court assigns weight to the evidence, and we restrict our inquiry "to whether there is substantial evidence to support the" Pension Board's decision. *Van Ermen v. DHSS*, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978).

¶22     Lara argues that the Pension Board's actions were contrary to law as well as arbitrary and unreasonable. First, he argues that the IHE was the proper impartial decision maker, not the Pension Board, because the Pension Board cannot make both the initial and final determination under WIS. STAT. § 68.11(2). Second, he argues that the Pension Board violated the statutory time limit to issue the final determination. Third, he contends that the Pension Board acted unreasonably and contrary to law when it returned the issue to the IHE for reassessment. Fourth, Lara asserts that the Pension Board's reliance on the inconsistent IME reports was arbitrary and unreasonable. The Pension Board responds that Lara has not met his burden of proof for his claims and that substantial evidence supports the decision.

*I.     Correct final decision maker*

¶23     Lara argues that the Pension Board violated WIS. STAT. § 68.11(2) because the IHE was the final decision maker, only the IHE could make credibility

11

determinations,[7] and the IHE's original report was the final determination. He then asserts that the Pension Board's issuance of the final determination was contrary to law because it also made the initial determination of Lara's eligibility for DDR benefits. He contends the Pension Board acted unreasonably and contrary to law when it did not promptly approve the IHE's decision. He asserts that previously, the Pension Board had always followed the IHE's recommendation. The Pension Board argues that it did not make the initial determination, it is the impartial decision maker of the final determination, and the IHE is not the decision maker, despite any language used by the IHE here, or any pattern in previous decisions.

¶24　To resolve the question of whether the IHE or the Pension Board makes the final determination, we must interpret WIS. STAT. § 68.11. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "As a general rule, courts apply the ordinary and accepted meaning of language in statutes, unless it leads to an absurd result." *Seider v. O'Connell*, 2000 WI 76, ¶32, 236 Wis. 2d 211, 612 N.W.2d 659 (citation omitted).

¶25　Under WIS. STAT. § 68.11(2), a municipal authority must "provide an impartial decision maker" to make the final decision on the administrative appeal. The decision maker "may be an officer, committee, board, commission or the governing body who did not participate in making or reviewing the initial

---

[7] We note that we address the issue of credibility determinations in section III on the Pension Board's authority to return the report to the IHE to reassess.

determination." *Id.* However, the decision maker is not required to conduct the hearing; instead, the municipal authority may appoint "an impartial person, committee, board or commission" to conduct the hearing "and report to the decision maker." *Id.*

¶26 Although an IHE could be appointed by a municipal authority to serve as the impartial decision maker, it is not a requirement, by the statute's plain meaning. The statute requires only that the impartial decision maker not participate in the initial determination. There is no support in WIS. STAT. § 68.11(2) or within § 68.11—and Lara offers no other legal authority—that requires that the IHE be the "impartial decision maker." Therefore, we conclude that the Pension Board had statutory authority to be the decision maker of the final determination.

¶27 Therefore, we turn to the Pension Board's impartiality, and specifically, whether it made the initial determination on Lara's benefit application. As the United States Supreme Court held, "prior involvement in some aspects of a case will not necessarily bar [an] official from acting as a decision maker"; however, the official should not "have participated in making the determination under review." *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970).

¶28 To resolve whether the Pension Board made the initial determination, we interpret relevant sections of the MCC. *See Milwaukee Police Ass'n v. Hegerty*, 2005 WI 28, ¶11, 279 Wis. 2d 150, 693 N.W.2d 738. "Like statutory interpretation, the interpretation and application of a municipal ordinance is a question of law" that we review independently. *Grycowski v. Milwaukee Emps.' Ret. Sys./Annuity & Pension Bd.*, 2021 WI App 7, ¶32, 395 Wis. 2d 722, 953 N.W.2d 904.

13

¶29     In the MCC provisions governing DDR benefits, a member applying for benefits "shall be examined by a medical panel and such medical panel shall make the examination, determination and certification" required to determine benefit eligibility.  MCC § 36-05-3-c-1-a.  If the medical panel (here, the Medical Council) recommends that the applicant is entitled to DDR benefits the Pension Board "shall thereupon grant such allowance."  *Id.*  The ordinance plainly authorizes the Pension Board to grant a DDR benefits allowance only when the Medical Counsel recommends the applicant for a benefits allowance.[8]  We construe the ordinance as authorizing the Medical Council to make a discretionary decision on the initial determination and recommendation on an applicant's eligibility for DDR benefits.  In contrast, the Pension Board does not have discretion; it must follow the Medical Council's recommendation.

¶30     Lara has not identified an MCC provision that gives the Pension Board the authority or discretion to overrule the Medical Council, if the Pension Board disagreed with the Medical Council's recommendation.[9]  The record reflects that the Pension Board adopted Medical Council's recommendations for all applicants during that month.  We consider the Pension Board's actions for the

---

[8] We observe that the use of the term "recommendation" in these MCC provisions is, at best, confusing and, at worst, risks being misleading about the Medical Council's role and authority.

[9] The record reflects that Lara received two letters from the executive director of ERS: (1) stating that the Medical Council submitted its certification that Lara did not meet the eligibility requirements for DDR benefits and that the Pension Board would receive that report at the July 27, 2022 meeting; and (2) stating that the "Pension Board accepted the Medical [Council's] recommendation" that his application for benefits be denied.  Lara argues this is evidence of the Pension Board making the initial determination.  While the ERS director's use of the word "accepted" may suggest that the Pension Board has authority *not* to accept the Medical Council's recommendation, the letters do not supersede the plain meaning of the MCC provisions, which do not provide discretion to the Pension Board in this determination.

initial determination to be administrative. *See City News & Novelty, Inc. v. City of Waukesha*, 231 Wis. 2d 93, 124, 604 N.W.2d 870 (Ct. App. 1999) (concluding that a mayor who had a purely administrative role presiding over the city council meeting where the initial determination was made was not barred from being on the panel that made the final determination when there was no evidence of bias presented).

¶31    Considering the initial determination and the final determination procedures, we conclude that the Pension Board did not make both determinations. As noted, the initial determination is driven by the Medical Council's examination determination, and the Pension Board's role in that determination is merely ministerial.  In contrast, the Pension Board makes a final determination on a DDR application with consideration of the IHE's report.  We conclude that the Pension Board's actions were not contrary to law.

II.    *Violation of the statutory time limit*

¶32    Lara argues that the Pension Board's final determination was issued 160 days after the mandatory 20-day time limit in WIS. STAT. § 68.12(1), which violated his due process rights.   The statute provides: "Within 20 days of completion of the hearing conducted under [WIS. STAT. §] 68.11 and the filing of briefs, if any, the decision maker shall mail or deliver to the appellant its written determination stating the reasons therefor."  Sec. 68.12(1).  Lara contends that the delay harmed him because it caused over a 5-month delay in his ability to collect benefits and, later, to contest the denial of benefits.

¶33    The Pension Board argues that the 20-day time limit is directory, not mandatory.  Although the Pension Board concedes the final determination was delayed, it argues it was 23 days late, not 160, as calculated from the IHE's

reassessment report and subsequent issuance of the decision—43 days after the reassessment report, and 23 days over the statutory time limit.

¶34     "The general rule is that the word 'shall' is presumed mandatory when it appears in a statute." *Karow v. Milwaukee Cnty. Civ. Serv. Comm'n*, 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978).  Nonetheless, a statutory time limit is deemed directory where "there is no substantial reason why the thing by statute required to be done might not as well be done after the time prescribed as before"; there is no "injury or wrong" for the act occurring after the time limit; or there is nothing in the statute "indicating that the [L]egislature did not intend that it should rather be done after the time prescribed than not done at all[.]"  *City of Appleton v. Bachman*, 197 Wis. 4, 9-10, 220 N.W. 393 (1928).

¶35     "Whether a statutory time limit is mandatory or directory is a question of law that we review independently."  *Koenig v. Pierce Cnty. DHS*, 2016 WI App 23, ¶39, 367 Wis. 2d 633, 877 N.W.2d 632.  When reviewing whether a statutory time limit is mandatory or directory, case law directs us to consider these four factors: "(1) the purpose of the statute; (2) the statute's history; (3) whether a penalty or prohibition is imposed for the violation of the time limit; and (4) the consequences of interpreting the statutory time limit as either mandatory or directory," which includes considering whether the failure to comply with the time limit injures or wrongs the appellant.  *Id.*, ¶45.

¶36    Our analysis comes down to the fourth factor—the consequences of the interpretation of the time limit under these facts and circumstances.[10]    To analyze the consequences, we look at whether an applicant suffers an injury or wrong if the written final determination is delivered after the time limit.    Lara argues the time limit is mandatory because the delay caused him injury; however, the only injury he asserts is a delay in receiving DDR benefits or pursuing an appeal.    Conversely the Pension Board contends the time limit is directory because an applicant for DDR benefits is not harmed because benefits, if granted, are provided retroactively based on the day the benefits application was filed.    Specifically, the MCC provides that when DDR benefits are granted, those benefits begin "not less than 30 nor more than 90 days after the filing of the application[.]"    MCC § 36-05-3-a.    Therefore, the date the final determination is mailed or delivered does not affect the calculation or eventual receipt of DDR benefits, if the application is granted in the appeal.    Accordingly, the delayed decision did not result in an injury to Lara.    *See Karow*, 82 Wis. 2d at 572 ("[A] time limit may be construed as directory when allowing something to be done after the time prescribed would not result in an injury.").    We conclude that under the facts and circumstances of this case the 20-day time limit is directory.

¶37    Because the Pension Board conceded that the final determination was delivered outside of the time limit and we conclude the time limit was directory, we do not resolve when the time limit began or determine whether the decision was "mail[ed] or deliver[ed]" within the time limit.    *See State v. Blalock*,

---

[10] We note that the first three factors are not dispositive.  Neither the purpose nor history of the statute demand a mandatory or directory interpretation of the time limit.  Further, the statute does not prohibit official action by an agency if the final determination is made outside of the 20-day time limit and the time limit does not restrict the applicant's actions.

150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground.") Lara fails to show that the Pension Board's delayed delivery of the final determination was unreasonable, contrary to law, or violated due process.

### III. Legal authority and reasonable actions to reassess the evidence

¶38 Lara argues that the Pension Board acted unreasonably, exercising its will and not its judgment, and contrary to law when it ordered the IHE to reassess the evidence from the hearing. He contends that there is no law, rule, or authority that allows the Pension Board to delay issuing a decision for a reassessment of evidence. He further asserts that remand to the IHE for reassessment proves that the Pension Board did not have or believe it had the authority to overrule the IHE's original report.

¶39 The Pension Board argues it has the inherent authority to undertake remedial actions to ensure the accuracy of agency decisions. "It is a fundamental and basic principle of administrative agency law that 'an administrative agency has the power to reconsider its own decisions since the power to decide carries with it the power to reconsider.'" *Schoen v. Board of Fire & Police Comm'rs of Milwaukee*, 2015 WI App 95, ¶20, 366 Wis. 2d 279, 873 N.W.2d 232 (one set of quotation marks and citation omitted).

¶40 As we concluded above that the IHE's original report was not a decision—instead, it was only a report to the decision maker—we are not persuaded that legal authority to reconsider a decision is on point. Our supreme court has recognized that an administrative agency may set aside the findings of an IHE or reach a different conclusion than that proposed by an IHE as long as a claimant is provided "due process of law." *Hakes v. LIRC*, 187 Wis. 2d 582, 588,

523 N.W.2d 155 (Ct. App. 1994). Ultimately, it is the Pension Board, not the IHE, that makes the fact-finding and credibility determinations. "The hearing examiner may make initial determinations on witness credibility, but these determinations are subject to the commission's independent review." *Id.* at 589. The Pension Board's final determination is an independent, original decision; it is not merely reviewing the IHE's determination.

¶41 Similarly, we reject Lara's argument that the IHE was the only person who could make credibility decisions. The record reflects that the IHE heard testimony, reviewed the evidence and determined admissibility, and made factual findings. When the Pension Board concluded that the IHE's report and recommendation were not supported by the evidence and relied upon factual errors, the Pension Board required the IHE to further discuss the evidence necessary for the Pension Board to make the final determination.

¶42 "Fundamental fairness requires that administrative agencies … set forth the reasons why a fact-finder's findings are being set aside or reversed, and spell out the basis for independent findings substituted." ***Transamerica Ins. Co. v. Department of ILHR***, 54 Wis. 2d 272, 283-84, 195 N.W.2d 656 (1972). An administrative agency must follow a two-step procedure to set aside the IHE's credibility determinations: (1) consult with the examiner and (2) submit a memo explaining its basis for rejecting a hearing examiner's findings. *Id.* Here, the remand to the IHE for reassessment and examination of the evidence satisfies the first step. The Pension Board's request for a second report from the IHE gave the Pension Board the benefit of the IHE's impressions of material witnesses. *See id.* The final determination itself was a written explanation of its basis for rejecting the IHE's findings; therefore, it satisfies the second step. *See id.*

¶43 The record reflects that the Pension Board's final determination discussed three issues with the IHE's original report. As we discussed in more detail below, the Pension Board criticized the IHE's report: (1) for ignoring the collective weight of the four IME reports, while ignoring concerns about Dr. Nora's opinion; (2) for containing multiple factual errors; and (3) for being conclusory and failing to consider the entire record. We conclude that the Pension Board was not acting unreasonably or contrary to law when it requested the IHE reassess the evidence and provide a report. The Pension Board satisfied the procedure set forth in *Transamerica Ins. Co.*, 54 Wis. 2d at 284. We conclude that the Pension Board's actions to require the IHE to reassess the evidence were neither willful nor contrary to law.

### IV. *Inconsistent IME reports and substantial evidence*

¶44 Lara argues that the Pension Board acted in an arbitrary and unreasonable manner because it relied on four IME reports that are inconsistent and reach disparate conclusions. Further, he asserts that by relying on inconsistent and speculative evidence, the Pension Board's decision was not supported by substantial evidence. He argues the Pension Board was unreasonable when it disregarded the consistent opinion of Dr. Nora and that the Pension Board mischaracterized Dr. Nora's opinion.

¶45 Discussing the inconsistencies in the IME reports, Lara contends that Dr. Palmer's report contradicted both Dr. Graebner and Dr. Osmon's report, leaving the latter opinions moot. While Dr. Palmer opined Lara lacked pre-existing mental health issues, Dr. Graebner opined Lara's condition appeared to be an unrelated mood disorder and Dr. Osmon opined that Lara's issues resulted from premorbid repressive defense mechanisms and prior head injuries. Dr. Swanson

opined that Lara's brain injury was not permanently disabling, and instead his issues stemmed from depression and anxiety; Lara points out that Dr. Swanson agreed that he suffered a TBI and that depression and anxiety were common after one. He argues that by accepting Dr. Palmer's diagnosis of no pre-existing mental health conditions, the only reasonable conclusion is that the depression and anxiety were caused by the workplace injury.[11]

¶46 Lara argues that the inconsistency among the four IME reports prevents a finding of substantial evidence to support the Pension Board's decision. This is simply not the standard. In our appellate review, we apply the substantial evidence test, which requires only that the findings be "supported by any credible and substantial evidence in the record, even if they are contrary to the great weight and clear preponderance of the evidence." *Teriaca v. Milwaukee Emps.' Ret. Sys./Annuity & Pension Bd.*, 2003 WI App 145, ¶30, 265 Wis. 2d 829, 667 N.W.2d 791 (citation omitted). Lara has the burden to prove he has a disabling condition and to prove a causative link between that condition and a work-related injury.

¶47 In this case, the Pension Board could have determined that Lara was disabled by a workplace injury based on Dr. Nora's evidence and testimony, in

---

[11] Lara and the IHE both discussed whether the medical reports, offered without testimony by the author, may be admissible under the relaxed evidentiary rules in administrative hearings and may qualify as an exception to hearsay. *See Gehin v. Wisconsin Grp. Ins. Bd.*, 2005 WI 16, ¶¶69, 86, 278 Wis. 2d 111, 692 N.W.2d 572. Because exceptions to hearsay are "still hearsay," administrative agencies may not "rely[] solely on uncorroborated hearsay" to satisfy the "substantial evidence" standard required to sustain their decisions. *Id.*, ¶58. Therefore, those IME reports cannot be the only evidence to support the Pension Board's decision to deny DDR benefits to Lara. However, the substantial evidence supporting the decision was not comprised solely of these medical reports. Dr. Swanson testified at the hearing. Her conclusion that Lara was not disabled by a workplace injury corroborates the other three IME reports reaching a similar, ultimate conclusion.

union with the IHE. However, "[i]t was just as reasonable for the [Pension] Board to give credence and weight to the other witnesses presented." *Harris*, 87 Wis. 2d at 659. The Pension Board rejected Dr. Nora's opinion as reliant on subjective patient reporting and instead adopted the collective IME reports' conclusion that Lara's condition was not the result of a workplace injury. We conclude that the Pension Board's findings and conclusions were supported by substantial evidence. The Pension Board's decision to weigh more heavily the collective IME reports' than Dr. Nora's report and testimony was not an arbitrary or unreasonable action and was not contrary to law.

## CONCLUSION

¶48     We conclude that the Pension Board's decision to deny DDR benefits to Lara was supported by substantial evidence in the record and was not arbitrary, unreasonable, or contrary to law. Accordingly, we affirm.

> *By the Court.*—Order affirmed.
>
> Recommended for publication in the official reports.

22